## Camp Isabella Freedman of Connecticut, Inc. *v.* Town of Canaan

### (two cases)

Baldwin, C. J., King, Murphy, Mellitz and Shea, Js.

Argued June 7—decided July 12, 1960

*Jonathan F. Ells,* for the appellant (defendant).

*Eugene M. Kagan,* with whom, on the brief, were *Irving S. Ribicoff* and *David Kotkin,* for the appellee (plaintiff).

MURPHY, J.  The plaintiff applied to the Court of Common Pleas for relief from the refusal of the taxing authorities in Canaan in 1956 and 1957 to exempt its property from taxation under the provisions of what is now General Statutes § 12-81 (7) as property of a Connecticut corporation organized exclusively for educational or charitable purposes and used exclusively for carrying out one or both purposes.[1] The court concluded that the plaintiff was entitled to the tax exemption.  From the judgment, the town has appealed.

The findings of fact, which have not been chal-

---

[1] "Sec. 12-81. EXEMPTIONS.  The following-described property shall be exempt from taxation:  . . . (7) . . . [T]he real property of . . . a Connecticut corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes and the personal property of . . . any such corporation, provided (a) any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiary of its strictly charitable purposes . . . ."

lenged, show that in 1956 Camp Isabella Freedman, Inc., a New York corporation, which had theretofore conducted a social welfare camp in the state of New York, purchased a 400-acre tract of land in Canaan for use as a camp site. The plaintiff was organized as a Connecticut corporation without capital stock on August 14, 1956, and acquired the Canaan property by deed from the New York corporation six days later. The property contains a lake for swimming and boating, tennis courts, and other sports and recreational areas as well as buildings to house and otherwise accommodate the campers, the camp personnel and the necessary facilities of the camp. The camp has a capacity for ninety-six campers; the average stay per person is ten days. Five hundred campers attended in each of the first two seasons. Of these, two suffered physical handicaps. Most of the campers are referred by social welfare, psychiatric and sociologic agencies. After an interview by a member of the plaintiff's staff, a camper is accepted if he is found to have a problem in social adjustment and to be in need of guidance. Applicants without social maladjustments and those who seek an inexpensive vacation are rejected. Admissions are not based on race, creed or color. The campers are economically underprivileged and single, eighteen to twenty-four years old, and pay an average of $37 per week toward the $77 weekly cost for each camper. No camper pays the full cost, and 10 to 12 per cent pay nothing. The deficit of $22,000 from camp operations in each of the two years in question was made up by grant from the Federation of Jewish Philanthropies. No officer, member or employee of the plaintiff has received, now receives or may in the future receive any pecuniary profit from the operation of the camp apart from reasonable

compensation for the services he renders. The plaintiff is not a religious organization and is not operated for religious purposes.

As indicated, the defendant has not assigned as error any of the findings of fact. It has, however, challenged the conclusions which the trier drew from those facts and also claims error in the overruling of the defendant's claims of law. There are two questions presented for our determination. The first is whether the plaintiff is organized exclusively for educational or charitable purposes or both, and the second is whether the property is used exclusively for the carrying out of either or both purposes. The unattacked finding that no person can derive a profit from the operation of the camp excludes what otherwise might be a third element. General Statutes § 12-81 (7) (a).

The conclusions of the trial court are to be tested by the finding. *State* v. *Perkins,* 146 Conn. 518, 522, 152 A.2d 627; *Gorman* v. *American Sumatra Tobacco Corporation,* 146 Conn. 383, 386, 151 A.2d 341. The court has found that group programs were planned and instituted at the camp by the social workers for the purpose of assisting the campers in their problems of social adjustment and that, accordingly, campers took part in dramatics as well as in swimming and other water-front activities. Individual programs were arranged for campers with special problems. There is nothing in the finding to show that any subjects of an educational nature were taught or that the plaintiff conducted an educational institution within the commonly accepted meaning of that term and the purview of the statute. *Forman Schools, Inc.* v. *Litchfield,* 134 Conn. 1, 8, 54 A.2d 710; *Edgewood School, Inc.* v. *Greenwich,* 131 Conn. 179, 183, 38 A.2d 792, and cases

cited. The charter of the plaintiff is silent as to any purpose which could be reasonably construed as educational. See *Langbein* v. *Board of Zoning Appeals,* 135 Conn. 575, 582, 67 A.2d 5; *New Britain Trust Co.* v. *Stoddard,* 120 Conn. 123, 127, 129, 179 A. 642; *Lyme High School Assn.* v. *Alling,* 113 Conn. 200, 203, 207, 154 A. 439. The conclusion of the court that the plaintiff was organized for educational purposes and that the property in Canaan was used for carrying out such purposes has no foundation in the finding of facts and is unwarranted.

As to the charitable aspects of the plaintiff, we have a different problem. The purposes for which the plaintiff is organized are to be found in its charter. *St. Bridget Convent Corporation* v. *Milford,* 87 Conn. 474, 482, 88 A. 881. Whether the property for which exemption is claimed is actually and exclusively used for those purposes must be determined from the facts of the case. *New Canaan Country School, Inc.* v. *New Canaan,* 138 Conn. 347, 349, 84 A.2d 691. Article 2, § 1, of the plaintiff's charter states that the corporation was formed, among other things, to "provide to those persons who could not otherwise afford the same, guidance, recreation and vacations." Article 2, § 6, provides that all of the plaintiff's property "shall be used exclusively for carrying out [its] . . . charitable purposes." The definition of charitable uses and purposes has expanded with the advancement of civilization and the daily increasing needs of men. *Mitchell* v. *Reeves,* 123 Conn. 549, 554, 196 A. 785. It no longer is restricted to mere relief of the destitute or the giving of alms but comprehends activities, not in themselves self-supporting, which are intended to improve the physical, mental and moral

condition of the recipients and make it less likely that they will become burdens on society and more likely that they will become useful citizens. *Bader Realty & Investment Co.* v. *St. Louis Housing Authority,* 358 Mo. 747, 752, 217 S.W.2d 489. Charity embraces anything that tends to promote the well-doing and the well-being of social man. Ibid. An institution is charitable when its property and funds are devoted to such purposes as would support the creation of a valid charitable trust. *Davie* v. *Rochester Cemetery Assn.,* 91 N.H. 494, 495, 23 A.2d 377. In *Shannon* v. *Eno,* 120 Conn. 77, 82, 88, 179 A. 479, we sustained a gift made to afford care and protection to, and alleviate the suffering of, a class of animals which by domestication contribute to the comfort, pleasure and well-being of man. In the light of these concepts, the conclusion of the court that the plaintiff is organized exclusively for charitable purposes is warranted, and the facts found sustain the further conclusion that the property in question was used exclusively for carrying out those purposes.

There is no merit to the defendant's contention that the only nonprofit camps or recreational facilities which are entitled to tax exemption in this state are those conducted by religious organizations for religious purposes, because of the specific provision covering such facilities in General Statutes § 12-81 (14).[2] To adopt such a construction would do violence to organizations, other than religious, which qualify under § 12-81 (7). The defendant, in its

---

[2] "Sec. 12-81. EXEMPTIONS. The following-described property shall be exempt from taxation: . . . (14) . . . [R]eal property and its equipment owned by . . . any religious organization and exclusively used as a school, [or] a Connecticut nonprofit camp or recreational facility for religious purposes . . . or for two or more of such purposes."

brief, claims that the plaintiff's property is not devoted to public use but to private recreational uses. This claim ignores the unattacked finding that the property has been dedicated to the public benefit and sequestered from a private use to a public use. Also, the defendant, in its brief, makes the statement that the campers are selected from applicants referred by various agencies in New York City and, inferentially, that none of the campers are residents of Connecticut. The defendant then claims that it is not the intention of the legislature to impose a tax burden on the smaller towns of this state by granting tax exemptions on property owned by Connecticut corporations but used for the benefit of nonresidents. The finding makes no mention of the location of the referring agencies or the places of abode of the selected campers, or that the issue was raised in the trial court. In the absence of such findings, we are not obliged to consider the point raised in the brief. It may be said, however, that the statute does not restrict the benefits to Connecticut residents. If such a restriction is desirable, it is a matter for action by the legislature. *Forman Schools, Inc.* v. *Litchfield,* 134 Conn. 1, 8, 54 A.2d 710. Claims of a like nature have been advanced in the courts of three of our New England states, and each has held that in the absence of legislative enactment the property of local charitable corporations is not to be denied tax exemption because the beneficiaries of the charity are out-of-state residents. And this is so though the inference is plain that the motive activating the organization of the local corporation was to take advantage of the tax exemption. *Camp Emoh Associates* v. *Lyman,* 132 Me. 67, 69, 166 A. 59; *Greater Lowell Girl Scout Council, Inc.* v. *Pelham,* 100 N.H. 24, 28, 117 A.2d 325; *Old Colony*

*Trust Co.* v. *Commissioner of Corporations & Taxation,* 331 Mass. 329, 339, 119 N.E.2d 175.

The ultimate conclusion in both cases that the plaintiff's property is tax exempt was correct.

There is no error in either case.

In this opinion the other judges concurred.