ELEANOR W. STAMAN & another, trustees, *vs.* BOARD OF
ASSESSORS OF CHATHAM
(and nineteen companion cases[1]).

Suffolk.   November 10, 1966. — December 12, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, SPIEGEL,
& REARDON, JJ.

*Charity.   Trust,* Charitable trust.   *Taxation,* Real estate tax: exemption.
*Young Women's Christian Association.*

----

[1] The trustees are an individual resident of Pennsylvania and a Pennsylvania
trust company, with a usual place of business in Philadelphia.   Various ap-
peals by the trustees concerning their properties in Chatham involve the same
issues.   They were consolidated in the county court.   One of these cases has
been before this court on a procedural point.   *Staman* v. *Assessors of Chatham,*
350 Mass. 100.

A charitable trust was established by the will of a woman giving the residue of her estate, including land and buildings and related furnishings in a seaside town, to trustees and directing them, subject to certain annuities, to pay the net income to maintain the real estate and to "operate . . . [the] properties as a place . . . available for the benefit, rest and recreation of white Protestant women from Philadelphia . . . and its vicinity, who are members of the Young Women's Christian Association of Philadelphia," a charitable organization for the promotion of Christian living, to pay "for the food and other reasonable living expenses of the . . . women who may be vacationing" on the properties, to pay surplus income to such organization for its general purposes, and at the death of the last annuitant to transfer the residue to the organization "for the . . . trusts aforesaid": the will set forth a charitable purpose, rest and recreation, reasonably described an indefinite class of beneficiaries sufficiently large, and impliedly required that the beneficiaries be selected on the basis of financial need and deserts. [483–485]

Real estate in Massachusetts of a charitable trust under the will of a resident of another State allowed there and allowed here as a foreign will and designating foreign trustees who were originally appointed there and later appointed here was exempt from local taxation under G. L. c. 59, § 5, Third, as amended by St. 1957, c. 500, § 1, where it appeared that the sole use of the real estate provided for in the will was a certain charitable activity to be carried on by the agents and beneficiaries of the trust thereon, and only thereon, and that the real estate was in fact so used; the exemption was not destroyed by reason of the facts that surplus income from investments of the trust could be paid, and some was paid, to a foreign charitable organization of which the trust beneficiaries were members and that all of such beneficiaries resided outside Massachusetts. [485–489]

APPEALS from decisions of the Appellate Tax Board.

*Gerald T. O'Hara* (*John L. Simonds* with him) for the taxpayers.

*Donald R. Grant* for the Board of Assessors of Chatham.

CUTTER, J. The trustees of the will of Avis A. M. Chase (the testatrix), late of Philadelphia, filed petitions with the Appellate Tax Board because aggrieved by the refusal of the Chatham assessors to treat the trust real estate in that town as exempt from taxation. The board's decisions were in favor of the assessors. From those decisions, the trustees appealed. The cases were heard by the board on the pleadings and a statement of agreed facts.

The testatrix's will, theretofore allowed in Pennsylvania, also was allowed in Massachusetts in 1954, as a foreign will, by the Barnstable Probate Court. The trustees have been

appointed as such by a Register of Wills in Pennsylvania and by the Probate Court for Barnstable County.

The testatrix at her death owned nine parcels of land and three frame buildings in Chatham. All the parcels are used in connection with each other and only for the charitable purposes mentioned below.

The will left the residue (including the land and buildings in Chatham and the related furnishings) to the testamentary trustees in trust to pay (subject to certain annuities) the net income to maintain the real estate and to ''operate . . . [the] properties as a place . . . available for the benefit, rest and recreation of white Protestant women from Philadelphia . . . and its vicinity, who are members of the Young Women's Christian Association [the YWCA] of Philadelphia . . . . If . . . there is a balance of income . . . not needed for the maintenance . . . of . . . [the] properties . . . my [t]rustees shall, in their discretion, pay the balance of income, or so much thereof as they may deem advisable, for the food and other reasonable living expenses of the . . . women who may be vacationing in said cottages; and any balance remaining shall be paid by my [t]rustees to the . . . [YWCA] of Philadelphia . . . for the general purposes of said Association.''[2]

Two of the annuitants have died. Four others, born in the period 1883–1898, are still alive. On March 13, 1964, the residuary trust, not including the Chatham properties, had a market value in excess of $712,000.

From 1959 on, ''the policy and practice of the [Philadelphia] YWCA has been to enroll the intended female bene-

---

[2] The will went on to provide, ''In the event that the . . . [YWCA] of Philadelphia will not accept this gift, or the purposes for which this gift is created cannot, at some future time, be fulfilled, then the . . . [YWCA] of Boston . . . shall be substituted for the . . . [YWCA] of Philadelphia . . . and the income from my residuary estate shall be paid for the maintenance of said real estate, which shall be . . . operated for the benefit of white Protestant women from Boston . . . and its vicinity, who are members of the . . . [YWCA] of Boston . . . .'' The trustees are directed to ''transfer . . . after the death of the last annuitant, all my . . . residuary estate . . . in fee simple, to the . . . [YWCA] of Philadelphia . . . for the . . . trusts aforesaid, in the event that the . . . [YWCA] of Philadelphia . . . for any reason cannot accept this gift, then to the . . . [YWCA] of Boston . . . for the . . . trusts aforesaid.''

ficiaries from Philadelphia for the vacations at Chatham from the latter part of June until Labor Day weekend. The YWCA sends one or two female supervisors who stay at the property during the summer months with Mrs. Taylor, the caretaker. The trustees have been purchasing the food for the breakfast and noon meal for the women and have provided the bedding and linen. The women do their own cooking and are given $1.50 by the trustees toward the night meal which they either buy in the [t]own or cook on the premises. . . . Because of heavy demand on the limited facilities, it has been necessary to reduce the permitted stay for each guest from two weeks to one week."

The premises ordinarily can accommodate sixteen to eighteen guests. On "weekends extra cots may be placed in the living rooms." The number of women using the property for one or two-week periods rose from twenty-eight in 1959 to eighty-two in 1963. "As of May 8, 1964, reservations had been made for 103 women for 1964. The average age of the women is approximately 55 and the ages run from approximately 18 to approximately 80. Mrs. Taylor is reimbursed by the [t]rustees for her routine expenses for purchase of food, laundry, and miscellaneous items."

The Philadelphia YWCA had in the years 1959 to 1963 between 13,530 and 15,092 members. It is "a charitable corporation organized under the laws of Pennsylvania and is an affiliated unit of the . . . [YWCA] of the United States of America." The purposes of the YWCA are: "[t]o build a fellowship of women and girls devoted to the task of realizing in our common life those ideals of personal and social living to which we are committed by our faith as Christians. In this endeavor we seek to understand Jesus, to share His love for all people, and to grow in the knowledge and love of God." The by-laws state that any woman or girl twelve years of age or more may become a member if she pays her membership dues. Annual dues for the years 1962 and 1963 were $3 for adults and $1 for children.

"The trustees . . . have construed the words 'from Phil-

adelphia and its vicinity' in . . . the will to include" not only Philadelphia but also certain surrounding communities. This area had a total population of 4,115,101 in 1960.

The executors of the estate had their first account allowed and the trustees have had their first and second accounts allowed. In each instance this has been done by the Barnstable Probate Court, after notice to all parties interested and to the Attorney General of Massachusetts.

1. Although the will does not in explicit terms confine the beneficiaries of the trust to women themselves indigent or financially unable to provide vacations for themselves, the will as a whole suggests that the beneficiaries are to be an indefinite class of persons needing "rest and recreation" and deserving of help. Some indications of a charitable purpose, and of an intention to help suitable recipients of charitable benefits, are (a) the limitation of the beneficiaries to members of the Philadelphia YWCA, a charitable organization for the promotion of Christian living (see Restatement 2d: Trusts, § 369, comments c and d; see also *Springfield Y.M.C.A.* v. *Assessors of Springfield,* 284 Mass. 1, 5–8); (b) the permission given to the trustees to spend money "for the food and other reasonable living expenses of the" vacationing women which suggests that there will be a need for such assistance; and (c) the gifts over of income and principal to the Philadelphia YWCA (or, as a substitute, the Boston YWCA, see fn. 2).

It is characteristic of a valid charitable trust that the designated beneficiaries constitute an indefinite class described reasonably. See Restatement 2d: Trusts, § 375; Scott, Trusts (2d ed.) § 375.2. The class need not be large. See *Sears* v. *Attorney Gen.* 193 Mass. 551, 553; *Rogers* v. *Attorney Gen.* 347 Mass. 126, 133. See also *Masonic Educ. & Charity Trust* v. *Boston,* 201 Mass. 320, 325; *Brady* v. *Ceaty,* 349 Mass. 180, 182. In the opinion of a majority of the court the class of beneficiaries of the Chase charitable trust is sufficiently large.

Some aspects of recreation have been recognized as appropriate purposes of a charitable trust, particularly when

made generally available to the whole public of a community or a large segment of the community. See *Assessors of Quincy* v. *Cunningham Foundation,* 305 Mass. 411, 412–413; *Peakes* v. *Blakely,* 333 Mass. 281, 285 (cultivation of forests); *Nickols* v. *Commissioners of Middlesex County,* 341 Mass. 13, 15, 18–20, 23–25 (reservation to be kept in its natural state); *Salem* v. *Attorney Gen.* 344 Mass. 626, 629–631 ("[p]ublic [g]rounds for the . . . enjoyment of the citizens"). See also *Norwood* v. *Norwood Civic Assn.* 340 Mass. 518, 524–525 (opportunities for wholesome recreation assumed to be charitable). Indeed, in a period when leisure time is increasing, special importance attaches to charitable gifts affording to the public and, to some extent (see Scott, Trusts [2d ed.] § 375.2) to indefinite groups in the public, opportunities for wholesome rest and recreation.

Where there is some relief of poverty, assistance or benefit to the less privileged, promotion of the health or the general welfare of a group, or other similar special advancement of deserving persons, gifts for the assistance of a described indefinite class have been said to be charitable, even where the benefits may have been in part recreation. See *Bowditch* v. *Attorney Gen.* 241 Mass. 168, 175–176 ("best interests of Sewing Girls in Boston" includes "whatever adds to their welfare"); *Worcester County Trust Co.* v. *Grand Knight of the Knights of Columbus,* 325 Mass. 748, 751, 753 (annual dinners for certain priests and sisters); Restatement 2d: Trusts, § 374, comments f and g (which says that a "trust to afford facilities to working girls for a fresh air vacation . . . is charitable").[3]  See

---

[3] Cases elsewhere include *Hicks Memorial Christian Assn.* v. *Locke,* 178 Ark. 892 (recreation association); *Averill* v. *Lewis,* 106 Conn. 582, 589 ("free rest" for teachers); *Camp Isabella Freedman of Conn. Inc.* v. *Canaan,* 147 Conn. 510, 514–517 (camp for underprivileged persons); *Estate of Scanlan,* 230 Ill. App. 505, 514–515 (public bathhouse); *Barr* v. *Geary,* 82 Ind. App. 5, 28–29 (summer vacation); *Camp Emoh Assoc.* v. *Lyman,* 132 Maine, 67 (camp for poor Jewish children); *Matter of Hare,* 1 Misc. 2d (N. Y.) 114, 115 (summer vacations for underprivileged children); *White* v. *Newark,* 89 N. J. Eq. 5, 6 (fresh air fund); *Seaside Home* v. *State Bd.* 98 N. J. L. 110 (summer home for children and old people); *Hill Trust,* 23 D. & C. 2d (Pa.) 791; *Wood* v. *Hartigan,* 59 R. I. 333, 335–337 (seaside summer home for infants); *Peters* v. *Commissioner of Int. Rev.* 21 T. C. 55, 57, 59 (swimming and recreation facilities).

also somewhat related cases involving homes for stated indefinite classes of beneficiaries, *Thornton* v. *Franklin Square House,* 200 Mass. 465, 466–467 (home for working girls); *Clark* v. *Mayor of Gloucester,* 336 Mass. 631, 632 (charitable gift for home for indigent females over sixty to be applied cy pres); *M.I.T. Student House, Inc.* v. *Assessors of Boston,* 350 Mass. 539, 542; Bogert, Trusts and Trustees (2d ed.) §§ 373–374, 379.[4]   As to the YWCA as a charitable venture, see *Bailey* v. *Young Women's Christian Assn. of Philadelphia,* 266 Pa. 255, 256 (where the YWCA is described as incorporated to look after the "moral and religious welfare of young women dependent upon their own exertions"); Scott, Trusts (2d ed.) §§ 374.11, 375.2.   We construe this trust as one for the benefit of deserving members and beneficiaries of the YWCA, a charitable organization, to be selected responsibly (on the basis of their need and deserts) to receive some of the amenities of rest and recreation in pleasant seaside surroundings which they otherwise could not afford.   We think that this is a charitable purpose, and that the opportunity for vacation and rest, without more, is a sufficient charitable benefit.   The presence of YWCA supervisors at the Chatham premises indicates that the atmosphere of the vacation home will be suitable and consistent with YWCA objectives.   The agreed facts suggest no failure by the trustees or the YWCA to observe the trust.

2.   The trustees contend that the Chatham properties are entitled to exemption from local taxation under G. L. c. 59, § 5, Third, as very substantially amended by St. 1957, c. 500, § 1.[5]

---

[4] British Commonwealth cases are to similar effect. See *In re Estlin,* 72 L. J. Ch. (N. S.) 687 (rest house for teachers); *In re Mariette,* [1915] 2 Ch. 284, 288–289 (school squash courts); *In re Gray,* 94 L. J. Ch. (N. S.) 430, 432–433 (regimental fund for fishing and sports); *In re James,* [1932] 2 Ch. 25 (rest home); *In re Chaplin,* [1933] Ch. 115, 118 (house for people in need of physical or mental recuperation); *Re Pearse,* [1955] 1 D. L. R. 801, 811–812 (Brit. Col. — home for sick or overworked governesses); *Re Dupree's Trusts,* [1944] 2 All E. R. 443, 444–445 (prize for encouragement of chess playing by young men).

[5] Section 5, Third, as thus amended, reads in part (emphasis supplied): "Third, Personal property of a charitable organization, which term, as used in this clause, shall mean (1) a . . . charitable . . . institution . . . incorporated

As appointees of the Barnstable Probate Court, the trustees come within § 5, Third (2), and constitute a "charitable organization" for the purposes of cl. Third. There was ample reason for their appointment merely to place on record the fact of their title to the Chatham property. It was, for example, advantageous to the trustees of this continuing trust to gain assurance that they would receive notice of any proposed action of public authorities or others affecting the property. See *Assessors of Everett* v. *Albert N. Parlin House, Inc.* 331 Mass. 359, 364–365. Indeed (although the legislative history is obscure, see 1957 Senate Doc. Nos. 462, 704) the 1957 amendments (see fn. 5 at point [A]) of § 5, Third, may have been brought about in part at least by the decision in 1954 in the *Albert N. Parlin House, Inc.* case.[6] In any event, the trustees were appointed by the Barnstable Probate Court and thus brought themselves within the terms (see fn. 5 at point [A]) of § 5, Third (2).

If the Legislature had intended that only trustees receiving their original appointment from a Massachusetts court should be included within § 5, Third (2), it would have been natural for it to have said so in explicit terms. We interpret the statute in accordance with the literal meaning of its language, particularly as a different interpretation (resulting in discrimination in the granting of tax exemptions as among otherwise similar charitable trusts solely on the basis of the court originally appointing the trustees) might

in the commonwealth, and (2) a trust for . . . charitable . . . purposes *if . . .* [A] *all its trustees are appointed by a court . . . in the commonwealth and* [B] *if its principal . . . charitable . . . purposes are solely carried out within the commonwealth or* [C] *its . . . charitable . . . purposes are principally and usually carried out within the commonwealth;* and real estate owned by or held in trust for a charitable organization and [D] occupied by it or its officers for the purposes for which it is organized,'' subject to provisos which need not be set out here. Letters in brackets are inserted for convenience in making reference to the language immediately following such letters, respectively. See Nichols, Taxation in Massachusetts (3d ed.) 238–244, and Pike and Cohen, Annotations (1962) pp. 10–16.

[6] A further purpose was clearly to insert the additional language (see fn. 5, at points [B] and [C]) not included in cl. Third, as it appeared prior to the 1957 amendment. See G. L. (Ter. Ed.) at pp. 686–687. See *MacGregor* v. *Commissioner of Corps. & Taxn.* 327 Mass. 484, 488–489, which comments on the absence from G. L. c. 65, § 1, as amended through St. 1941, c. 605, § 1, of words similar to some of those inserted in 1957 (see fn. 5 at point [C]).

present serious constitutional doubts. Such doubts, of course, should be avoided if reasonable principles of interpretation permit doing so. See *Opinion of the Justices,* 341 Mass. 760, 785; *Boston Safe Deposit & Trust Co.* v. *State Tax Commn.* 346 Mass. 100, 106.

The statute (§ 5, Third) itself requires (see fn. 5, at points [B] and [C]), as a basis for exemption, that the trust's "principal charitable . . . purposes . . . [be] solely carried out" in Massachusetts or that its "charitable . . . purposes . . . [be] principally and usually carried out within" Massachusetts. This trust of land relates to a charitable use of Massachusetts real estate. The trust with respect to that real estate, requiring charitable activity only on that land, cannot reasonably be said to be one for execution elsewhere. That, subject to the maintenance of the vacation houses in Chatham, surplus income from the investments held in the residuary trust may be paid to the Philadelphia YWCA for charitable use does not affect the specific charitable trust with respect to the land. That trust of the land, in substantial respects, is separable from the administration of the residuary trust investments by the Philadelphia bank which is one of the trustees (fn. 1). In any event, the payment to the Philadelphia YWCA in 1962 of $2,000 of surplus income from a 1962 residuary trust gross income of $20,987.33 and in 1963 of $4,000 from a 1963 trust gross income of $24,861.67 is not sufficient to prevent the charitable activities of the residuary trust (even viewed as a whole) from being "principally and usually carried out within the commonwealth."

The real estate was occupied (see fn. 5 at point [D]) by the trust "for the purposes for which it is organized" within the meaning of § 5, Third. The agreed facts show that the Chatham land is used for no other purpose than for the charitable activity of the agents and beneficiaries of the trust. The occupation of the land, within the meaning of § 5, Third, is by the trust and not by the persons using the premises. See *M.I.T. Student House, Inc.* v. *Assessors of Boston,* 350 Mass. 539, 542.

Section 5, Third, does not fail to exempt from taxation the property of a charitable trust carried out principally in Massachusetts, otherwise not subject to taxation, merely because most or all of the beneficiaries reside outside Massachusetts. The mere fact that a trust is created for the benefit of nonresidents of the Commonwealth "does not prevent the trust from being charitable." *Teele* v. *Bishop of Derry,* 168 Mass. 341, 342. *Thorp* v. *Lund,* 227 Mass. 474, 478–479. Restatement 2d: Trusts, § 374, comment i. Scott, Trusts (2d ed.) § 374.8. Clause Third makes the exemption depend upon the geographical situs of the principal charitable activity, not upon the place of residence of the beneficiary. We do not read into cl. Third a restriction upon the exemption of property used for charity in Massachusetts which the Legislature has not seen fit to insert. *Assessors of Quincy* v. *Cunningham Foundation,* 305 Mass. 411, 415–420. See *Old Colony Trust Co.* v. *Commissioner of Corps. & Taxn.* 331 Mass. 329, 339; *Camp Isabella Freedman of Conn. Inc.* v. *Canaan,* 147 Conn. 510, 516–517; *Camp Emoh Assoc.* v. *Lyman,* 132 Maine, 67, 69 (all but one of some 250 children at a charitable camp came from outside the State).

One reason for the special favor (see *Thorp* v. *Lund,* 227 Mass. 474, 477) with which the law views charitable trusts has been said to be their effect of "lessening the burdens of government." See *Jackson* v. *Phillips,* 14 Allen, 539, 556. Clause Third, however, does not make it a prerequisite to tax exemption that the burdens of the Commonwealth or the local government collecting the tax be lessened. The benefits of charitable activity often extend beyond local and State boundaries. Whatever is of sufficient community benefit in another jurisdiction to be regarded as charitable within St. 43 Eliz. I, c. 4,[7] is likely to make a contribution to the general welfare sufficient so that assistance of it by tax exemption is permissible.

This case is not controlled by decisions arising under the

---

[7] See Restatement 2d: Trusts, § 368, comment a.

inheritance tax law, G. L. c. 65, § 1, as amended through St. 1941, c. 605, § 1, prior to the amendment of c. 59, § 5, Third, in 1957 to insert broad new language (fns. 5, 6). See, e.g., *MacGregor* v. *Commissioner of Corps. & Taxn.* 327 Mass. 484, 488–490; *Old Colony Trust Co.* v. *Commissioner of Corps. & Taxn.* 331 Mass. 329, 344–345. See also *Old Colony Trust Co.* v. *Commissioner of Corps. & Taxn.* 343 Mass. 613.

3. The decisions of the Appellate Tax Board are reversed. The cases are remanded to the board for appropriate action, consistent with this opinion, affording the trustees the benefit of the exemption under G. L. c. 59, § 5, Third, as amended.

*So ordered.*