WATERBURY FIRST CHURCH HOUSING, INC. *v.*
F. GEORGE BROWN, TAX COMMISSIONER

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and MACDONALD, Js.

Argued January 13—decision released April 13, 1976

*Ralph G. Murphy,* assistant attorney general, with whom were *Richard K. Greenberg,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, for the appellant (defendant).

*J. Warren Upson,* with whom were *W. Fielding Secor,* and, on the brief, *Harry C. Blake* and *Raymond F. Voelker,* for the appellee (plaintiff).

MacDonald, J.  The issue raised by this appeal is whether a nonprofit housing corporation, which, with financial assistance from the federal government, rents apartments to the elderly at below market rates, constitutes a "charitable organization" so as to be entitled to exemption from the sales and use tax upon the sales to it of tangible personal property, as provided in § 12-412 (h) of the General Statutes.[1]

The facts have been stipulated and, insofar as relevant, may be briefly summarized.  The plaintiff is a nonstock corporation, organized under the laws of the state of Connecticut by certificate of incorpo-

---

[1] Section 12-412 of the General Statutes provides in relevant part: "Taxes imposed by this chapter shall not apply to the gross receipts from the sale of and the storage, use or other consumption in this state with respect to the following items: . . . (h) Sales of tangible personal property to charitable and religious organizations."

ration dated June 20, 1969, for the purpose of acquiring a site upon which to construct and operate housing for senior citizens, and whose only activity is the operation and management of Robin Ridge Apartments in Waterbury, the housing units for the elderly subsequently constructed by it. The expenses of the corporation consist principally of the operating expenses of the apartment units and the debt service on the mortgage note of $2,841,000 which the corporation issued to secure building funds, and, to meet those expenses, the plaintiff relies primarily on rental income from its tenants and federal assistance. The federal housing administration (FHA) guaranteed the corporation's mortgage note and, in addition, provides a program of rent supplements to tenants whose income does not enable them to meet the rent set by the corporation. The tenants' rent, combined with the low-interest, long-term mortgage made possible by the federal guarantee and with the federally provided direct rent supplements, allows the corporation to meet all of its expenses while providing apartments at rates below market. The corporation's only other source of funds has been a $17,000 loan from the First Congregational Church of Waterbury, which the plaintiff is obligated to begin repaying after the mortgage is fully paid. It does not appear from the record that the plaintiff relies to any extent on the receipt of gratuitous transfers of real or personal property to help defray its costs. The management of the corporation is conducted by a board of directors composed entirely of members of the First Congregational Church of Waterbury who are not compensated for their services.

The plaintiff corporation is exempt from federal taxation as a charitable organization within the

standards of the Internal Revenue Code, 26 U.S.C. § 501 (c) (3).[2]  Also, the plaintiff has been designated a community housing development corporation so as to qualify for property tax abatement, pursuant to §§ 8-217 and 8-218 of the General Statutes.[3]

The defendant tax commissioner, after a hearing, denied the plaintiff's application for exemption from the sales tax upon sales to it of tangible personal property, and from that decision the plaintiff, pursuant to the provisions of § 12-422, appealed to the Court of Common Pleas.  The court, in sustaining the appeal, ordered that the defendant issue a tax exemption certificate to the plaintiff, and it is from the judgment rendered thereon that the defendant tax commissioner has appealed to this court.

The determining factor in the decision of the trial court appears to be the standard it employed to determine the plaintiff's charitable status as stated in its conclusion:  "The use to which plain-

[2] 26 U.S.C. § 501 (c) (3) exempts from federal income taxation: "Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office."

[3] The parties in their briefs discuss the significance of the plaintiff's eligibility for abatement of real property taxes.  Section 8-215 of the General Statutes provides in part for "the abatement in part or in whole of real property taxes on any housing solely for low or moderate-income persons or families."  There is no requirement that the property be owned, managed, operated by or in any way related to a charitable organization and we agree with the plaintiff that the corporation's property tax abatement status is in no way dependent upon the plaintiff's status as a charitable organization.

tiff's real property is dedicated is the sole determinative factor with respect to plaintiff's entitlement to the statutory exemption from sales and use taxes." We agree that this is one of the standards to be employed and that this standard has been met by the plaintiff. The meaning of "charitable" is not confined to its use in § 12-412 (h). Our General Statutes for many years have exempted from taxation the real property of Connecticut corporations "organized exclusively for . . . charitable purposes," § 12-81 (7), and there is no reason to believe that the legislature intended a special meaning when it exempted "charitable organizations" from the sales and use tax.[4]

"The definition of charitable uses and purposes has expanded with the advancement of civilization and the daily increasing needs of men. *Mitchell* v. *Reeves,* 123 Conn. 549, 554, 196 A. 785. It no longer is restricted to mere relief of the destitute or the giving of alms but comprehends activities, not in themselves self-supporting, which are intended to improve the physical, mental and moral condition of the recipients and make it less likely that they will become burdens on society and more likely that they will become useful citizens. *Bader Realty & Investment Co.* v. *St. Louis Housing Authority,* 358 Mo. 747, 752, 217 S.W.2d 489. Charity embraces anything that tends to promote the well-doing and the well-being of social man. Ibid. An institution is charitable when its property and funds are devoted to such purposes as would support the creation of a valid charitable trust. *Davie* v. *Rochester Ceme-*

---

[4] Section 12-407 of the General Statutes, entitled "Definitions," contains no definition of "charitable," nor did the original "Education, Welfare and Public Health Tax Act" adopted in 1947 contain such a definition. See Public Acts 1947, No. 228, § 2.

*tery Assn.*, 91 N.H. 494, 495, 23 A.2d 377." *Camp Isabella Freedman of Connecticut, Inc.* v. *Canaan*, 147 Conn. 510, 514, 162 A.2d 700.

The purposes for which a corporation is organized are to be found in its charter; *St. Bridget Convent Corporation* v. *Milford*, 87 Conn. 474, 482, 88 A. 881; and the plaintiff's certificate of incorporation lists as a purpose: "For elderly families and elderly persons on a non-profit basis, to provide rental housing and related facilities and services specially designed to meet the physical, social, and psychological needs of the aged, and contribute to their health, security, happiness and usefulness."[5] Moreover, the plaintiff's charter specifically prohibits it and any officer, member or employee from ever receiving any pecuniary profit from the corporation's operation. We can take judicial notice of the fact that in recent years large sums of public funds have been expended to provide low-income housing, and the plaintiff's dedication to making private low-rental housing for elderly persons on fixed incomes a reality clearly is an effort to "make it less likely that they will become burdens on society" and is, therefore, charitable. *Camp Isabella Freedman of Connecticut, Inc.* v. *Canaan*, supra, 515. "Whether the property for which exemption is claimed is actually and exclusively used for . . . [charitable] purposes must be determined from the facts of the case." *Id.*, 514. On the factual record of this case, it seems clear that the plaintiff has satisfied the requirement that it be "organized exclusively for charitable purposes." *Id.*, 515.

[5] It does not appear from the record that the plaintiff has ever actually offered any facilities or services specially designed to meet the needs of the elderly tenants. But we are here concerned only with the purposes for which the plaintiff corporation was formed.

The existence of a purpose that can be characterized as charitable, however, does not in itself render a corporation charitable and tax-exempt. An institution must be exclusively charitable, not only in the purposes for which it is formed and to which its property is dedicated, but also in the manner and means it adopts for the accomplishment of those purposes. Connecticut law for over 150 years has recognized that an essential characteristic of a charitable organization, besides a charitable purpose, is that it achieve its purpose "through the means of funds, derived from the gratuities of the benevolent." *American Asylum* v. *Phoenix Bank,* 4 Conn. 172, 177. In the *American Asylum* case, decided in 1822, this court was called upon to decide whether an incorporated school, whose sole object was the education and instruction of the deaf and dumb and whose only means of doing so were derived from the charity of individuals who either contributed gifts to the school or subscribed to membership shares of the nonprofit corporation, was "an incorporated school for charitable purposes." Referring to an early landmark decision of the United States Supreme Court, then only recently decided, Chief Justice Hosmer stated (p. 177): "The interesting and luminous decision of the supreme court of the United States, in the case of the trustees of *Dartmouth College* v. *Woodward,* 4 Wheaton, [17 U.S.] 518, with which I entirely accord, and to which I shall have a silent reference in my opinion, only renders it necessary to state the grounds of it very briefly. Eleemosynary corporations, or those created for charitable purposes, are such as are constituted for the *perpetual distribution of the free alms of the founders of them,* to such purposes as they have directed. Of this description

are hospitals for the maintenance of the poor, sick, or impotent, and colleges or schools for the promotion of piety and learning. The establishment of an institution for the dissemination of learning, has always been considered a charity. The true test of an institution is its origin and objects. *If it is founded on donations,* and has for its purpose the accomplishment of a charity, by the distribution of alms, it most unquestionably is eleemosynary." (Emphasis added.)

Obviously, the scope of charitable purposes has moved considerably beyond the "mere relief of the destitute or the giving of alms." *Camp Isabella Freedman of Connecticut, Inc.* v. *Canaan,* supra, 514. But the requirement that the exempt organization's income be based to some measureable extent on "sums coming from private sources which are spent for the public weal" remains. See *Connecticut Junior Republic Assn., Inc.* v. *Litchfield,* 119 Conn. 106, 111–12, 174 A. 304, where this court stated, quoting *Corbin* v. *Baldwin,* 92 Conn. 99, 107, 101 A. 834: "Exemptions are made, and can be made lawfully, only in recognition of a public service performed by the beneficiary of the exemption; . . . they are granted in aid of the accomplishment of a public benefit and for the advancement of the public interest. It is in recognition of their position as an agency in the doing of things which the public, in the performance of its governmental duties, would otherwise be called upon to do at its own expense, or which ought to be done in the public interest and without private intervention would remain undone. *Yale University* v. *New Haven,* 71 Conn. 316, 332, 42 Atl. 87. In the fullest sense of the word, the exemptions are given for the assistance and help of the private endeavor in its effort to advance the

public interest or to perform some share of the public governmental duty. . . . The amount of taxes which are lost to the State and its political subdivisions by reason of exemptions are of trifling consequence as compared with the *sums coming from private sources which are spent for the public weal.*" (Emphasis added.) In the *Camp Isabella Freedman* case, for example, the corporation which was held to be tax exempt conducted a social welfare camp for maladjusted children. Since none of the campers paid the full cost, it was not self-supporting and the deficit from camp operations was made up by a grant from the Federation of Jewish Philanthropies.

We cannot find, on the record before us, that the plaintiff has shown sufficient private intervention and private effort to earn charitable status. It does not appear from the record that the plaintiff is the beneficiary of any gifts from private sources, and the only funds which it has to distribute consist of rental income from its tenants and the federal subsidies which it receives. Under the terms of the FHA guarantee on its mortgage, the net income of the corporation is obligated for forty-two years to pay off the mortgage note. Any funds accruing to the corporation must then be used to repay the loan from the First Congregational Church of Waterbury. In the *Camp Isabella Freedman* case, we noted that charitable activities had expanded over the years in purposes, but we adhered to and specifically mentioned (p. 514) the conception that charitable uses and purposes comprehend activities "not in themselves self-supporting." The plaintiff's enterprise to provide needed low-cost housing to a certain segment of our population with the assist-

ance of the federal government was intended to be self-supporting, without any indication that gifts or charity were involved.

Courts in other jurisdictions with charitable tax-exemption provisions similar to those of Connecticut have arrived at the conclusion that a nonprofit corporation organized to construct FHA-financed housing for the elderly is not entitled to a charitable tax exemption and many of the opinions in those cases employ language applicable to the factual situation presented here. "We agree . . . that the activity of providing facilities to meet the special residential requirements of the aged may qualify an institution for tax exemption as one of purely public charity under circumstances where . . . aid is dispensed to those in sickness or distress 'without regard to poverty or riches of the recipient' and 'the funds, property and assets of such institution are placed and bound by its laws to relieve, aid and administer' to the relief of those in want, sickness and distress. But it is apparent that . . . [the plaintiff] is not accepting residents without regard to their financial circumstances nor is it bound to assume charitable obligations or to engage in dispensing relief to those in need. The requisite elements of dedication and use in fact of its properties are not present. There is no assurance that society is being or will be relieved of the care and expense of those in need. This is not to say that all residents must be indigent or that the acceptance of payment from some will defeat tax exemption. It is to say that the institution must be one whose properties and assets are pledged in perpetuity to the relief of persons in financial need and to their assistance in obtaining the care they must have to prevent their becoming a burden on society. Laudable as

it is in origin and operation, . . . [the plaintiff] does not meet the requirements . . . for exemption from taxation as an institution of purely public charity." *Hilltop Village, Inc. v. Kerrville Independent School District,* 426 S.W.2d 943, 949 (Tex.); see *Dow City Senior Citizens Housing, Inc. v. Board of Review,* 230 N.W.2d 497, 499 (Iowa); *County of Douglas v. OEA Senior Citizens, Inc.,* 172 Neb. 696, 707, 111 N.W.2d 719; *Mountain View Homes, Inc. v. State Tax Commission,* 77 N.M. 649, 655, 427 P.2d 13.[6] On the other hand, courts which have held homes for senior citizens to constitute charitable organizations have stressed that the homes under consideration were funded by substantial gifts rather than by purchase and amortization of indebtedness. See *Defenders' Townhouse, Inc. v. Kansas City,* 441 S.W.2d 365, 373 (Mo.); *State Board of Tax Commissioners v. Methodist Home for the Aged,* 143 Ind. App. 419, 241 N.E.2d 84; *In re United Presbyterian Homes,* 428 Pa. 145, 236 A.2d 776.

We find error in the trial court's application of a standard for defining charitability that looked

---

[6] The language of the Supreme Court of New Mexico in *Mountain View Homes, Inc. v. State Tax Commission,* 77 N.M. 649, 655, 427 P.2d 13, characterizes a factual situation similar to ours as follows: "True, no one makes a pecuniary profit, and certain persons and families who may be described as 'low-income,' 'workers,' 'aged,' or 'underprivileged' are provided better housing at lower prices than would otherwise be available to them. A benefit is thus bestowed. However, the recipients are certainly in *no sense sick or indigent,* and we would venture that most would be surprised to learn that they are considered as being proper objects for, or as recipients of charity. There is nothing in the record which indicates that any are welfare clients, or are permitted to occupy apartments without payment of the established rental. Neither is there any element of fraternity, brotherhood or good fellowship intended to improve the spirits or impel to renewed effort."

only to the purpose of an organization's activities without considering whether it achieves its charitable purposes through the use of charitable funds.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal.

In this opinion the other judges concurred.