[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 5846
This action is an appeal by the plaintiffs, Nicholas Chaconis, Kerry Chaconis, Kenneth Grant, Gilbert Jerzyk and Pran Patel (hereinafter "plaintiffs"), from a decision of the defendant, Planning Zoning Commission of the Town of Wallingford (hereinafter "PZC"), to grant a change of use permit to the co-defendants, the Wallingford Emergency Shelter, Inc. (hereinafter the "shelter"), which will allow the shelter to use a vacant bank office in Wallingford as a temporary shelter for homeless people.
The plaintiffs Nicholas Chaconis and Pran Patel allege that they own property abutting the site of the proposed homeless shelter. The plaintiffs Kenneth Grant and Gilbert Jerzyk allege that they own property in the vicinity of the proposed shelter. The court finds the plaintiffs Chaconis and Patel are aggrieved.
On February 11, 1992, the shelter applied to the PZC for a change of use permit to operate a temporary shelter for the homeless on a 0.39 acre parcel of property in Wallingford, Connecticut. Currently, a vacant bank office is on the parcel.
The parcel is in a "CA-12" zone which is a general commercial and office development zone designated for areas located in or near major streets. (Wallingford Zoning Regulations [zoning regulations], 4.5A). The zoning regulations allow, as a matter of right subject to site plan review, "educational, religious or philanthropic use by a non-profit corporation or governmental unit, excluding correctional institutions or institutions for the insane." (Zoning Regulations 4.5B(1)).
The shelter's proposal calls for using the existing building as a group shelter for homeless people. The shelter intends to operate from early evening to early morning during the approximately six "cold weather" months in the area (October to March). After a public meeting on the change of use permit, the PZC approved the permit with two conditions: (1) the shelter would only operate during the six "cold weather" months and (2) the shelter's maximum occupancy would be seventeen people and two staff members.
The plaintiffs appeal from that decision. The plaintiffs raise four issues on appeal. CT Page 5847
The first issue is stated —
 As the Regulations of the Town of Wallingford do not list transient shelter as a permitted use, did the defendant Planning and Zoning Commission act illegally, arbitrarily and in abuse of the discretion vested in it by not voting on the record to establish it as a permitted use.
In regard to this issue, the plaintiffs argue that to meet the requirements of a "philanthropic use by a non-profit corporation" and thus be a use permitted by right in the CA-12 zone, the shelter must offer proof that it complies with the provisions of General Statutes 33-419 et seq., General Statutes8-395 et seq., and with the Internal Revenue Service provision for tax exempt/charitable status. Since this proof was not on the record before the PZC, the PZC's decision, implied in the approval of the change of use permit, that the shelter is a non-profit corporation, is not a "philanthropic use" as contemplated by the regulations.
The zoning regulations allow, as a matter of right subject to site plan review, "educational, religious or philanthropic use by a non-profit corporation or governmental unit, excluding correctional institutions or institutions for the insane." (Zoning Regulations 4.5B(1)). The zoning regulations do not state that an entity proposing a use in the CA-12 zone must meet any specific requirements to be considered a non-profit corporation or a philanthropic use. In fact, the zoning regulations do not define "nonprofit", "corporation" or "philanthropic".
The PZC approved the shelter's application for a change of use permit. Implicit in that decision was that the proposed use met the requirements for permitted uses in the zone, namely that the shelter was a philanthropic use by a nonprofit corporation. "General Statutes 8-6 entrusts the commission with the function of interpreting and applying its zoning regulations." Baron v. Planning Zoning Commission, 22 Conn. App. 255, 257,576 A.2d 589 (1990).
Nevertheless, "[c]onstruction of zoning regulations is a CT Page 5848 regular function of the courts." East Lyme v. Waddington,4 Conn. App. 252, 259 n. 2, 493 A.2d 903 (1985). The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts. Pascale v. Board of Zoning Appeals, 150 Conn. 113,117, 186 A.2d 377 (1962). The trial court must not substitute its judgment for that of the zoning commission and decisions of local commissions will not be disturbed as long as honest judgment has been reasonably and fairly exercised. Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 654, 427 A.2d 1346
(1980).
Regulations must be interpreted in light of the rule that if the language of the statute is clear and unambiguous, the courts cannot, by construction, read into statutes provisions which are not clearly stated. Mazur v. Blum, 184 Conn. 116, 118-19,441 A.2d 65 (1981). Notwithstanding, where a term is not defined in the regulations, its meaning is considered ambiguous. Link v. Shelton, 186 Conn. 623, 627, 443 A.2d 902 (1982). "Where a statute or regulation does not define a term, it is appropriate to focus upon its common understanding as expressed in the law and upon its dictionary meaning." Ziperstein v. Tax Commissioner, 178 Conn. 493, 500, 423 A.2d 129 (1979).
A. "Nonprofit Corporation"
General Statutes 33-420 et seq. contains the provisions for nonstock corporations. For purposes of this statute section, General Statutes 33-421 (f) defines a "corporation" as:
 ". . . any corporation without capital stock formed under the laws of this state. . . ."
"Corporation" is also defined as:
 "An artificial person or legal entity created by or under the authority of the laws of a state. An association of persons created by statute as a legal entity."
Black's Law Dictionary 307 (5th ed. 1979).
General Statutes 33-421 (1) provides that: CT Page 5849
 "A corporation is `nonprofit' if no part of its income is distributable to its members, directors or officers, provided the payment of reasonable compensation for services rendered, the granting of benefits to members in conformity with the corporations nonprofit purposes and the making of distributions upon dissolution of final liquidation as provided by this chapter shall not be deemed a distribution of income."
Further:
 "The test for determining whether a corporation is nonprofit is whether the members receive any dividends or other pecuniary remunerations or whether the corporation is being exploited for direct monetary gain."
18 C.J.S. Corporations 5 (1990).
The record contains testimony from several sources about the nature of the shelter's operation and financial structure. Several references were made about the shelter's board of directors, officers and bylaws. (Return of record [ROR], ex. 10, pp. 1, 2, 6, 7, 33, 35). The shelter's director explained to the PZC that the shelter's:
 "[L]aws are that we operate in the winter, six months a year, to take people off the street in the winter months."
(ROR, ex. 10, p. 35). When asked about the shelter's finances by a member of the PZC, the shelter's director informed the PZC that:
 "As you well know, [the] shelter is run by volunteers alone. . . We don't have a payroll. . . . [The] town gives $8,000, the State of Conn. $16,000, with that alone we pay rent."
CT Page 5850
(ROR, ex. 10, p. 6). The shelter's director and president stated:
 "We are incorporated. We have 16 Board members."
(ROR, ex. 10, p. 7). In response to a question about whether the town would lose taxes on the building, a PZC member responded:
 "[W]e would not be able to tax them because it is a non-profit organization."
(ROR, ex. 10, p. 17).
Finally, evidence was presented to the court to indicate that no income was distributed to the shelter's directors or that the shelter's officers earned any income for their work at the shelter.
B. "Philanthropic Use"
Neither "philanthropic" nor "philanthropic use" is defined in the zoning regulations. The court should apply the same standards for its interpretation and construction of these terms as were applied in the above analysis.
Neither "philanthropic" nor "philanthropic use" are defined in the General Statutes or in state case law. "Philanthropic" is defined as "charitable." Ballentine's Law Dictionary 946 (3d ed. 1969). "Charitable" is synonymous with "philanthropic." West's Legal Thesaurus 28 (1986). "Charitable use" is broadly defined in Camp Isabella Freedman of Connecticut v. Canaan, 147 Conn. 510,514-15, 162 A.2d 700 (1960). "The definition of charitable uses and purposes has expanded with the advancement of civilization and the daily increasing needs of men. It is no longer restricted to mere relief of the destitute. . . . Charity embraces anything that tends to promote the well-doing and the well-being of social man." Id.
In addition to the details of the shelter's operation noted in the analysis above, the shelter's director stated at the public hearing: CT Page 5851
 That is the purpose of the Wallingford Emergency Shelter which was founded 7 years ago mainly to house the people that have no place in the winter months. . . . We give them clothes. We give them hot meals at night. . . . We also hire a psychologist and a case worker. . . . We don't promote homelessness. We try to put them on the right path to society.
(ROR, ex. 10, p. 35).
The shelter presented evidence on the record that its sole purpose is in fact the "mere giving relief to the destitute" of both sexes. Therefore, based on the record, the court could reasonably conclude that the shelter is a philanthropic use of the type allowed in the CA-12 zone as of right. Therefore, the PZC's finding, implicit in the approval of the change of use permit, that the shelter was a philanthropic use, was reasonable and supported by the evidence.
The second point which is claimed by the plaintiffs in the above matter constitutes the matter of the site plan. According to the Regulations, the site plan is necessary for an approval of a change of use in the CA-12 district. No mention of the site plan was made during the course of the hearing. The Zoning Regulations of the Town of Wallingford provides, in part, in Section 7.1(C), that
 "The Commission or the Town Planner shall have the authority to waive the necessity for Commission approval for changes of use in existing buildings, if the change of use does not affect existing parking, circulation, drainage, relationship of buildings to each other, landscaping, buffering, lighting, and other considerations of Site Plan review."
"Proceedings before [zoning administrative bodies] are necessarily informal." Saporiti v. Zoning Board of Appeals,137 Conn. 478, 482 (1951). Furthermore, Chesson v. Zoning Commission, 157 Conn. 520, 527, states as follows: CT Page 5852
 "Modern procedural concepts do not favor tardy complaints concerning matters involving no prejudice or injustice which, through inattention or design, have gone unmentioned until too late for corrections."
Nowhere in the transcript is there any mention of the site plan. The site plan filed with the application shows no improvements. This is the eighth application filed by the shelter. It is logical to find that this application was accepted by the Planning Director as submitted, and the site plan requirement, like the filing fee, were waived by the Planning Director.
The third point which was mentioned by the plaintiffs as a ground for reversal would be the participation by the Chairman as an advocate for the applicant.
The plaintiff cites the statute, 8-11 of the Conn. General Statutes, which in relevant part reads as follows:
 "No member of any zoning commission shall appear for or represent any person, firm, corporation or other entity in any matter pending before the planning or zoning commission."
The transcript indicates that there was a full hearing with plenty of participation by the opposition and at one point an unidentified speaker asked this question of the chairman: "Could you please briefly comment on what this process will be from this point on." Mr. Piscitelli, the Chairman, answered the question by saying, "The process is that we will give the applicants an opportunity to answer some questions if he wants to. And then we move back to the commission. And the Commission will make, and I do not know what the commission will do at this point, whether it will approve it or not approve it, or postpone it. I have no idea and that is the procedure. You have something to add sir?"
The fourth point raised by the plaintiffs in this matter is the purported denial of due process to certain unidentified speakers. It was not a hearing. It was a meeting called for the purpose of considering a transfer of title to the nonprofit corporation. As such, there was no hearing and therefore no due CT Page 5853 process claim could be made. The second aspect of this is the fact that the people who are deprived of the right to speak were not identified.
 "The plaintiffs have no standing to raise in this appeal any claim of unfair treatment to a person who is not a party."
Weigel v. Planning Zoning Commission, 160 Conn. 239, 247
(1971).
The Commission did not injure the rights of any of the participants at the hearing.
The appeal is dismissed.
Robert P. Burns, Judge