JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 22351 *vs.* SEX OFFENDER REGISTRY BOARD. No. 10-P-1699. January 4, 2012. *Sex Offender. Sex Offender Registration and Community Notification Act. Constitutional Law,* Sex offender. *Due Process of Law,* Sex offender.

The plaintiff appeals from a judgment by a judge of the Superior Court affirming a final classification decision by the Sex Offender Registry Board (SORB) that required the plaintiff to register as a level three sex offender. His principal argument is that SORB may not complete the classification process while he remains indefinitely confined as a "sexually dangerous person" (SDP) pursuant to G. L. c. 123A. We recently rejected a similar argument made by a sex offender who was serving a prison term. *Doe, Sex Offender Registry Bd. No. 1* v. *Sex Offender Registry Bd.,* 79 Mass. App. Ct. 683, 687-690 (2011). The question we now face is whether a different result should follow where the sex offender is not serving a criminal sentence but instead is civilly confined as an SDP. Because we conclude that this distinction does not make a difference, we affirm.

As we noted in the *Doe* decision, the Legislature has enacted specific provisions toward ensuring that sex offenders who are currently confined are classified before they are released. *Id.* at 688, citing G. L. c. 6, §§ 178E(*a*), 178L(1)(*a*). In establishing the timetable of the required procedural steps, those provisions do not draw a distinction between confined sex offenders who are "incarcerated" and those who are otherwise held in custody.[1] See G. L. c. 6, § 178E(*a*), as amended by St. 2006, c. 303, § 1 (requiring "the agency which has custody of [a] sex offender" to take a certain step "[w]ithin [five] days of receiving upon sentence [that] sex offender"); G. L. c. 6, § 178L(1)(*a*), inserted by St. 1994, c. 74, § 2 (requiring SORB to provide a confined sex offender certain notice "[n]ot less than [sixty] days prior to the release or parole of [that] sex offender from custody or incarceration"). The plaintiff has provided no convincing showing based on the language of the statute that the timing of the classification process for sex offenders confined

---

[1]The term "incarcerated" connotes imprisonment rather than civil commitment. See *Gagnon, petitioner,* 425 Mass. 1015, 1016 (1997) (distinguishing between commitment under G. L. c. 123A and "the incarceration of convicted criminals").

as SDPs was meant to be different than that for sex offenders who are incarcerated.

The plaintiff argues that the indefinite length of an SDP's confinement weighs in favor of delaying final SORB classification until it becomes clear that he will be released. If anything, we think that this distinction cuts the other way. The fact that an SDP theoretically could be released at any time provides more reason to go forward with the classification process now, not less. The facts of the current case are illustrative in this respect. The SORB classification process and the plaintiff's petition to be released from confinement pursuant to G. L. c. 123A, § 9, went forward at the same time. The SORB hearing on the plaintiff's classification level came just two weeks before the plaintiff's scheduled § 9 trial (at which time the jury might have ruled in his favor, resulting in his release).[2]

The plaintiff makes one argument that merits extended discussion. An SDP would win release from custody where the Commonwealth failed to carry its burden of proving, beyond a reasonable doubt, that he remains "sexually dangerous." See G. L. c. 123A, §§ 1, 9. The plaintiff argues that such an adjudication may signal that there has been a significant change in the sex offender's underlying circumstances that also warrants reexamination of his SORB classification status. Compare *ibid.* with G. L. c. 6, § 178K(1). However, under SORB's regulation as currently written, an individual who has been released from SDP custody could petition for reclassification only after he has "remained at liberty for more than five continuous years." 803 Code Mass. Regs. § 1.37C(2)(d)(1) (2004). According to the plaintiff, where the classification process was finalized before such a change of circumstances may have occurred (indeed, perhaps many years before it occurred), then by the time the sex offender was released back into society, his SORB classification might be based on stale, materially inaccurate information. Maintaining that this would deny him procedural due process rights, see *Doe* v. *Attorney Gen.*, 430 Mass. 155, 161 (1999), the plaintiff invites us to interpret the statute as intending to postpone the final classification for those held in SDP custody until we know their actual release is imminent. See *Staman* v. *Assessors of Chatham*, 351 Mass. 479, 487 (1966) (doubts as to a statute's constitutionality "should be avoided if reasonable principles of interpretation permit doing so").

The precise meaning and application of the SORB reclassification regulation is not currently before us, and we therefore do not reach the question whether the regulation might evince more flexibility than the plaintiff ascribes to it.[3] In any event, we decline to interpret the statute in the backhanded manner the plaintiff suggests in order to address a potential due process problem that may never be presented. We leave the adjudication of the plaintiff's ability to seek reclassification — either by regulation or as matter of due process — until the issues become ripe. See *Commonwealth* v. *Bankert*, 67 Mass.

---

[2]Notably, the SORB hearing examiner agreed to keep the record in that proceeding open until after the SDP trial.

[3]At oral argument, SORB seemed to agree with the plaintiff's interpretation that the five-year waiting period was inflexible. However, SORB was commenting on the regulation in the abstract; it was not presented with having to apply its regulation to a petition that might present a compelling case for reclassification before the five-year period had run.

App. Ct. 118, 121 (2006), quoting from *Commonwealth* v. *Two Juveniles*, 397 Mass. 261, 264 (1986) ("As to constitutional questions, our 'traditional and salutary practice' is not to answer them in the abstract and to wait 'until the circumstances of a case are established' that require an answer to such questions").

*Other issues.* The plaintiff's additional arguments require little discussion.

1. *Recusal.* We agree with the Superior Court judge that certain comments that the hearing examiner had posted on a coworker's page on the social networking Web site Facebook, while inappropriate,[4] did not require her recusal. Nonetheless, we emphasize that citizens confined pursuant to G. L. c. 123A, and their counsel, are entitled to a quasi judicial proceeding conducted with the utmost dignity and attention to law.

2. *Public hearing.* "Hearings held by [SORB] shall not be open to the public." 803 Code Mass. Regs. § 1.10(2) (2002). The plaintiff complains that two correction employees were present at his hearing: one for security and transportation supervision, and the other for security and operation of the videotape equipment. We agree with the judge that the hearing was not, in these circumstances, open to the public. There was good reason for the officers to be present, and we discern no prejudice.

3. *Psychotherapist-patient privilege.* At the hearing, the plaintiff sought to challenge some of SORB's records as protected by his psychotherapist-patient privilege. See G. L. c. 233, § 20B. See also Mass. G. Evid. § 503 (2011). The plaintiff was insufficiently specific as to which records contained the privileged information, and why. Nevertheless, in her ruling on the motion to exclude the allegedly privileged information, the hearing examiner wrote: "I will do my best to assess [the plaintiff's] risk of reoffense and degree of dangerousness without considering the material at issue . . . . If I do consider any of the material at issue, I will specifically note it." Her decision on the merits is quite detailed and does reference the specific records upon which she relies for each finding. She did not rely on any of the documents alleged to be privileged. We do not reach the underlying question whether any of those documents were in fact privileged.

*Judgment affirmed.*

*Eric B. Tennen* for the plaintiff.
*William H. Burke* for the defendant.

---

[4] In the words of the Superior Court judge, "[t]his argument [for recusal] brings forward a most unfortunate episode wherein the hearing officer in this case was publicly reported as writing remarks on a social networking website that diminished the seriousness of her work as a SORB officer."