## ISAIAH 61:1, INC. *v.* CITY OF BRIDGEPORT
### (SC 17036)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

---

Argued January 15—officially released July 13, 2004

*Russell D. Liskov*, associate city attorney, for the appellant (defendant).

*Margaret J. Slez*, for the appellee (plaintiff).

*Opinion*

ZARELLA, J. The sole issue presented in this appeal is whether certain property owned by the plaintiff, Isaiah 61:1, Inc., qualifies for tax exempt status under General Statutes § 12-81 (7).[1] We conclude that it does and, therefore, affirm the judgment of the trial court.

---

[1] General Statutes § 12-81 provides in relevant part: "The following-described property shall be exempt from taxation:

\* \* \*

"(7) Property used for . . . charitable purposes. . . . Subject to the provisions of sections 12-87 and 12-88, the real property of . . . a corporation organized exclusively for . . . charitable purposes . . . and used exclusively for carrying out . . . such purposes . . . . On or after July 1, 1967, housing subsidized, in whole or in part, by federal, state or local government and housing for persons or families of low and moderate income shall not constitute a charitable purpose under this section . . . ."

We note that § 12-81 (7) was amended in 2000; see Public Acts 2000, No. 00-215, § 3; and again in 2003. See Public Acts 2003, No. 03-270, § 1. Those amendments, however, have no bearing on the merits of this appeal. See

We briefly set forth the following relevant facts. In April, 1982, the plaintiff incorporated in the state of Connecticut as a nonprofit corporation, which the Internal Revenue Service recognizes as a tax exempt organization under 26 U.S.C. § 501 (c) (3). The plaintiff's certificate of incorporation provides that the plaintiff's purposes are: "1. To establish and maintain, in the inner city of Bridgeport, Connecticut, a center of hospitality, whose services are offered to all in need, regardless of race, color, creed, faith, sex or social status, as a witness of concern for the impoverished, the oppressed, the addicted, the confused, the alienated, lonely and unloved in our midst; to provide shelter, companionship, and place of sharing and caring, meals, clothing referrals and all other feasible services for ex-offenders and others who seek the aid of [the plaintiff] . . . . 2. To cooperate with local agencies, churches and civic groups to provide support and service to meet the needs of ex-offenders. 3. To introduce ex-offenders coming out of penal institutions to a caring community which will aid them spiritually and physically in the difficult process of re-entry into society by bearing witness to faith, hope, and love in place of doubt, despair and indifference." The plaintiff's bylaws elaborate on these goals and set forth a mission statement declaring that "[t]he purpose of the [plaintiff] is to identify and assist men and women leaving correctional facilities who want to change their lives, within the context of their community, in order to successfully re-enter society. To accomplish these goals, [the plaintiff] will offer substance abuse counseling, vocational counseling and family therapy since reintegration with family is an imperative dimension for one's wholeness."

On June 28, 1995, the plaintiff acquired the subject property, which is located at 120 Clinton Avenue in

footnote 6 of this opinion. For ease of reference, we refer to the current revision of § 12-81 (7).

Bridgeport, by special warranty deed. After substantial renovations to the building, the building opened in 1998 as a licensed rooming house capable of housing fourteen occupants.

The plaintiff entered into a two year contract with the state department of correction (department), commencing July 1, 1996, which the parties renewed in 1998 and again in 2000. In exchange for the exclusive use of the plaintiff's 120 Clinton Avenue facility to house, to rehabilitate and to counsel male inmates completing the final months of their sentences, the department agreed to pay the plaintiff on the basis of the level of occupancy. The payments constituted approximately 90 percent of the plaintiff's funding.

As part of the rehabilitation process, the plaintiff requires its inmate residents to seek employment, although their participation in the program is not contingent upon whether they actually are employed. Employed residents pay weekly "rent," the amount of which the plaintiff determines from a sliding scale based upon the individual's income. These weekly payments range from $10 to $80 and constitute approximately 9 percent of the plaintiff's funding.[2] Residents who are unemployed remain in the program but are not required to pay weekly "rent." In previous years, the residents have contributed as much as $33,516 in "rent" annually.

The defendant city of Bridgeport (city) assessed taxes on the subject property in 1999, and the plaintiff appealed to the board of assessment appeals, which denied the appeal. Thereafter, the plaintiff appealed to the trial court, which reversed the decision of the board of assessment appeals and determined that the property qualified for tax exempt status under § 12-81 (7). The city appealed to the Appellate Court, and we transferred

---

[2] The plaintiff receives an additional 1 percent of its funding from private donations.

the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

It is well settled that "[w]e review the trial court's conclusion in a tax appeal pursuant to the well established clearly erroneous standard of review. Under this deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Internal quotation marks omitted.) *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport*, 262 Conn. 213, 219–20, 811 A.2d 1277 (2002). "A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 23, 807 A.2d 955 (2002).

It is equally well established that "in taxation cases . . . provisions granting a tax exemption are to be construed strictly against the party claiming the exemption," who bears the burden of proving entitlement to it. (Internal quotation marks omitted.) *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport*, supra, 262 Conn. 220. "Exemptions, no matter how meritorious, are of grace . . . . [Therefore] [t]hey embrace only what is strictly within their terms. . . . We strictly construe such statutory exemptions because [e]xemption from taxation is the equivalent of an appropriation of public funds, because the burden of the tax is lifted from the back of the potential taxpayer who is exempted and shifted to the backs of others." (Citation omitted; internal quotation marks omitted.) Id. "[I]t is also true, however, that such strict construction neither requires nor permits the

contravention of the true intent and purpose of the statute as expressed in the language used." (Internal quotation marks omitted.) *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375, 279 A.2d 561 (1971).

The city claims that the plaintiff's property does not qualify for tax exempt status under § 12-81 (7), and is not otherwise tax exempt under General Statutes § 12-88, because: (1) the premises are rented to department inmates; (2) the inmates occupying the premises pay "rent" to the plaintiff; (3) the plaintiff's bylaws and certificate of incorporation are silent with respect to the provision of housing;[3] and (4) the inmates who reside at the facility are low income wage earners whose "rent" is subsidized by the department. The city thus claims that our decision in *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport,* supra, 262 Conn. 213, controls the present case.

The plaintiff responds that its property qualifies for tax exempt status under §§ 12-81 (7) and 12-88. Specifically, the plaintiff asserts that "the subject property is used exclusively for the charitable purpose set forth in its certificate of incorporation and that such property does not constitute state subsidized housing or housing for persons or families of low and moderate income as those exceptions are intended under . . . § 12-81 (7)."

[3] The city claims in its brief, without any explanation or citation to authority, that the plaintiff "has nothing in its charter or by-laws that allow[s] for it to provide housing." The city's brief contains no discussion as to the significance of this contention, and we can only infer that the city is claiming that the plaintiff's provision of housing is ultra vires. We disagree. As we previously have observed, we look to a corporation's charter to determine the corporation's purpose. See, e.g., *Waterbury First Church Housing, Inc.* v. *Brown,* 170 Conn. 556, 561, 367 A.2d 1386 (1976); *Camp Isabella Freedman of Connecticut, Inc.* v. *Canaan,* 147 Conn. 510, 514, 162 A.2d 700 (1960). A review of the plaintiff's certificate of incorporation reveals that one of the plaintiff's express purposes is "to provide *shelter* . . . and all other feasible services for ex-offenders . . . ." (Emphasis added.) The facts establish that the plaintiff provides shelter to its clients.

(Internal quotation marks omitted.) Moreover, the plaintiff contends that, under our holding in *Hartford Hospital* v. *Hartford,* supra, 160 Conn. 378, the plaintiff's receipt of "rent" from the resident inmates does not undermine the exclusive use of the property for charitable purposes. We agree with the plaintiff.

Section 12-81 sets forth a description of property that is deemed tax exempt if certain requirements are satisfied. General Statutes § 12-81 provides in relevant part: "The following-described property shall be exempt from taxation . . . (7) . . . Subject to the provisions of sections 12-87[4] and 12-88,[5] the real property of, or held in trust for, a corporation organized exclusively for . . . charitable purposes . . . and used exclusively for carrying out . . . such purposes . . . ." Subdivision (7) of § 12-81 provides, however, that, "[o]n and after July 1, 1967, housing subsidized, in whole or in part, by federal, state or local government and housing for persons or families of low and moderate income shall

---

[4] General Statutes § 12-87 provides: "During any year for which a report is not required by subdivisions (7), (10) and (11) of section 12-81, a report shall be filed during the time prescribed by law for the filing of assessment lists next succeeding the acquiring of property not theretofore made exempt by said subdivisions. Property otherwise exempt under any of said subdivisions and this section shall be subject to taxation until the requirements of said subdivisions and of this section have been complied with."

[5] General Statutes § 12-88 provides in relevant part: "Real property belonging to, or held in trust for, any organization mentioned in subdivision (7) . . . of section 12-81, which real property is so held for . . . the purposes stated in the applicable subdivision, and from which real property no rents, profits or income are derived, shall be exempt from taxation though not in actual use therefor by reason of the absence of suitable buildings and improvements thereon, if the construction of such buildings or improvements is in progress. The real property belonging to, or held in trust for, any such organization, not used exclusively for carrying out one or more of such purposes but leased, rented or otherwise used for other purposes, shall not be exempt. If a portion only of any lot or building belonging to, or held in trust for, any such organization is used exclusively for carrying out one or more of such purposes, such lot or building shall be so exempt only to the extent of the portion so used and the remaining portion shall be subject to taxation."

not constitute a charitable purpose under this section
. . . ."[6] General Statutes § 12-81 (7). In construing this
statute, we have embraced a broad definition of the
term "charitable purpose," which, includes, inter alia,
"activities . . . which are intended to improve the
physical, mental and moral condition of the recipients
and make it less likely that they will become burdens
on society and more likely that they will become useful
citizens. . . . Charity embraces anything that tends to
promote the well-doing and the well-being of social
man." (Citation omitted; internal quotation marks omit-
ted.) *United Church of Christ* v. *West Hartford*, 206
Conn. 711, 719, 539 A.2d 573 (1988).

Property otherwise exempt from taxation under § 12-
81 (7) also must satisfy the conditions set forth in Gen-
eral Statutes § 12-88, which provides in relevant part:
"Real property belonging to, or held in trust for, any
organization mentioned in subdivision (7) . . . of sec-
tion 12-81, which real property is so held for . . . the
purposes stated in the applicable subdivision . . .
shall be exempt from taxation . . . . The real property
belonging to . . . any such organization . . . not used
*exclusively* for carrying out . . . such purposes but
leased, rented or otherwise used for *other purposes*,
shall not be exempt. . . ." (Emphasis added.) Thus, in
order for real property used for charitable purposes to

---

[6] We recognize that, on July 9, 2003, the legislature amended § 12-81 (7)
through its enactment of Public Acts 2003, No. 03-270, § 1 (P.A. 03-270).
Public Act 03-270, § 1, added the following relevant language to § 12-81 (7):
"As used in this subdivision, '*housing*' *shall not include* real property used
for *temporary housing* belonging to, or held in trust for, any corporation
organized exclusively for charitable purposes and exempt from taxation for
federal income tax purposes, the primary use of which property is . . .

"(iv) *Housing for ex-offenders or for individuals participating in a
program sponsored by the state Department of Correction* . . . ." (Empha-
sis added.) P.A. 03-270, § 1.

We need not address the applicability of P.A. 03-270, § 1, to the present
case because our application of precedent is consistent with the language
contained in P.A. 03-270, § 1.

qualify for tax exemption under §§ 12-81 (7) and 12-88, the property must: (1) belong to or be held in trust for a corporation organized exclusively for charitable purposes; (2) be used exclusively for carrying out such charitable purposes; (3) not be leased, rented or otherwise used for a purpose other than the furtherance of its charitable purposes; (4) not be housing subsidized by the government; and (5) not constitute low or moderate income housing. See General Statutes §§ 12-81 (7) and 12-88; see also *Hartford Hospital* v. *Hartford*, supra, 160 Conn. 376–77.

In the present case, we begin with a review of our precedent in which we have construed the provisions of §§ 12-81 and 12-88. Specifically, we must determine the applicability of our holdings in *Hartford Hospital* v. *Hartford*, supra, 160 Conn. 370, *United Church of Christ* v. *West Hartford*, supra, 206 Conn. 711, and *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport*, supra, 262 Conn. 213. We examine each of these cases in turn.

In *Hartford Hospital*, the defendant city of Hartford appealed from the judgment of the Court of Common Pleas directing it to remit to the plaintiff hospital (hospital) property taxes that the hospital had paid on an apartment building.[7] *Hartford Hospital* v. *Hartford*, supra, 160 Conn. 371. Located adjacent to the hospital, the building was used exclusively to house hospital staff, including interns, residents and one janitor, all of whom paid rent to the hospital. Id., 371–72. At trial, the parties stipulated that "[i]t [was] necessary for the

[7] We note that, although the subject property in *Hartford Hospital*, having been the property of a hospital, was governed by § 12-81 (16), and not § 12-81 (7), our discussion in *Hartford Hospital* of cases governed by § 12-81 (7) informs us that we have treated those two subdivisions similarly. Moreover, we note that our conclusions in *Hartford Hospital* that were based on § 12-88 equally apply to the present case, as both subdivisions (7) and (16) of § 12-81 subject properties of charitable organizations and hospitals, respectively, to the provisions of § 12-88. See General Statutes § 12-81 (7) and (16).

[hospital] to provide housing for a large number of its house staff in close proximity to those buildings which [were] used for the care of patients in order properly to perform its services as a hospital." Id., 372. On the basis of these facts, the Court of Common Pleas determined "that the property in question [was] used exclusively for hospital purposes; that the exclusiveness of the use [was] not impaired by the fact that the [hospital] charge[d] rent for occupancy; and that the property [was] tax exempt." Id.

On appeal to this court, the defendant claimed that the use of the subject property to house hospital staff, in combination with its collection of rent, rendered the property taxable in accordance with the provisions of §§ 12-81 (16)[8] and 12-88. See id. We first undertook a review of three cases, namely, *New Canaan Country School, Inc.* v. *New Canaan*, 138 Conn. 347, 84 A.2d 691 (1951), *Yale University* v. *New Haven*, 71 Conn. 316, 42 A. 87 (1899), and *Arnold College for Hygiene & Physical Education* v. *Milford*, 144 Conn. 206, 128 A.2d 537 (1957) (*Arnold College*). *Hartford Hospital* v. *Hartford*, supra, 160 Conn. 373–75. We observed that the subject property in *New Canaan Country School, Inc.*, which consisted of two houses owned by the school and used by faculty members and their families due to a housing shortage that had made it difficult to hire

_____
[8] General Statutes § 12-81 provides in relevant part: "The following-described property shall be exempt from taxation:

\* \* \*

"(16) Hospitals and sanatoriums. Subject to the provisions of section 12-88, all property of, or held in trust for, any Connecticut hospital society or corporation or sanatorium, provided (A) no officer, member or employee thereof receives or, at any future time, shall receive any pecuniary profit from the operations thereof, except reasonable compensation for services in the conduct of its affairs, and (B) in 1967, and quadrennially thereafter, a statement shall be filed by such hospital society, corporation or sanatorium on or before the first day of November with the assessor or board of assessors of any town, consolidated town and city or consolidated town and borough, in which any of its property claimed to be exempt is situated. . . ."

teachers, did not qualify for tax exemption. Id., 373; see *New Canaan Country School, Inc.* v. *New Canaan,* supra, 352. We noted our conclusion that "the houses were not used for any educational purposes whatever . . . that the existence of a housing shortage was irrelevant to the test of the [property tax exemption] statute and that the houses were convenient residences for the teachers and were used as such . . . ." *Hartford Hospital* v. *Hartford,* supra, 373; see *New Canaan Country School, Inc.* v. *New Canaan,* supra, 352.

In contrast, we observed that the subject property in *Yale University,* which included, inter alia, observatory buildings, two houses in which the officers of the observatory resided, and adjoining land, and the property in *Arnold College,* which included, inter alia, dormitory space, part of which was occupied by a faculty member, and a caretaker's cottage, were tax exempt. *Hartford Hospital* v. *Hartford,* supra, 160 Conn. 374; see *Arnold College for Hygiene & Physical Education* v. *Milford,* supra, 144 Conn. 208, 211; *Yale University* v. *New Haven,* supra, 71 Conn. 334. We noted that "[i]t is well established that the exemption granted is not limited to the buildings used for educational purposes in the limited and restricted sense. It extends to all of the property the use of which is incidental to education, including campuses and playing fields." (Internal quotation marks omitted.) *Hartford Hospital* v. *Hartford,* supra, 375. We determined that the conclusions in *Yale University* and *Arnold College* were necessarily governed by the specific facts of each case and that the facts of those cases were "clearly distinguishable" from the facts of *New Canaan Country School, Inc.* Id.

With this backdrop, we then examined the apparent legislative intent of § 12-88, as reflected in the language of the statute. See id., 375–76. We noted that the second sentence of General Statutes § 12-88, which provides that an organization's property that is not used exclu-

sively for carrying out the organization's purposes but that is "leased, rented or otherwise used for other purposes, shall not be exempt," was "the key sentence of [the statute] . . . and state[d] the basic premise upon which an exemption may be denied." *Hartford Hospital* v. *Hartford*, supra, 160 Conn. 376. We determined that, under § 12-88, "property belonging to or held in trust for a hospital which is used exclusively for carrying out hospital purposes shall be exempt. If the property is leased, rented or used for anything other than hospital purposes [however] it shall not be exempt. The determining factor is the exclusive use of the property for hospital purposes. The distinction is not between nonrental and rental but between use exclusively for hospital purposes and nonhospital use. The third sentence of § 12-88 exempts from taxation any portion of a lot or building used exclusively for hospital purposes even though the remaining portion shall be subject to taxation. This serves to emphasize our construction of the second sentence that the basic question is whether the use was exclusively for hospital purposes or for some other purpose. As this court said in *Yale University* v. *New Haven*, [supra, 71 Conn. 328], '[t]he fact that certain sums are paid for use of the rooms occupied . . . does not alter the character of the occupation.'

"The parties [in *Hartford Hospital*] . . . stipulated that it is necessary for the [hospital] to provide housing for a large number of its house staff in close proximity to those buildings which are used for the care of its patients in order properly to perform its services as a hospital. We take judicial notice that members of a hospital house staff may be on call at all hours of the day or night. A number of decisions in states with comparable statutes have granted tax exemptions to hospitals in similar factual situations." *Hartford Hospital* v. *Hartford*, supra, 160 Conn. 376–77. Our holding in *Hartford Hospital* therefore instructs that property can

be tax exempt under § 12-81 (7), notwithstanding its rental, as long as it is used exclusively for the organization's charitable purposes. See id., 377–78.

We examined the issue again in *United Church of Christ* v. *West Hartford*, supra, 206 Conn. 711, in which the plaintiff church appealed[9] from the judgment of the trial court upholding the decision of the local board of tax review to deny it a property tax exemption pursuant to § 12-88. Id., 712–13. The church, a nonstock corporation, had acquired six acres of land, two of which were used for the construction of a church building. Id., 714. On the remaining four acres, the church sought to build an elderly housing complex. Id. The housing complex was to consist of sixteen residential units,[10] with such amenities as grounds maintenance, on-site parking, recreational and health services, pastoral counseling and use of church facilities for cultural and recreational affairs. Id., 714–15. Approximately 90 percent of the funding for the development of the housing complex would come from "gifts"; id., 715; consisting of a one-time payment of $73,000 by individuals, each of whom would receive the privilege of occupying a single housing unit for as long as he or she could live there independently. Id. In addition to an age requirement, under which at least one of a unit's occupants would have to be at least sixty-two years old, the residents were required to pay a monthly maintenance fee of $350 per unit. Id.

On appeal to this court, the church claimed that it had sustained its burden of proving that its housing

[9] The church initially appealed to the Appellate Court, which affirmed the trial court's judgment. See *United Church of Christ* v. *West Hartford*, 9 Conn. App. 448, 459, 519 A.2d 1217 (1987). On the granting of certification, the church appealed to this court. See *United Church of Christ* v. *West Hartford*, supra, 206 Conn. 713.

[10] At the time of trial, the church had constructed six of the sixteen units. See *United Church of Christ* v. *West Hartford*, supra, 206 Conn. 715.

complex was being used exclusively for charitable purposes. Id., 717–18. In rejecting this claim and affirming the judgment of the Appellate Court, we noted that the church was "under no legal obligation to provide any services that would impose any significant financial burden on it. The monthly fee cover[ed] virtually all the . . . expenses [for the housing complex]. The incidental auxiliary services (i.e., weeding and landscaping) offered by the [church did] not raise the entire project to an exclusive charitable use entitled to a tax exemption." Id., 721. We highlighted the fact that, "[u]nlike other projects that provide 'lifetime' health care . . . [the church] ha[d] merely volunteered to negotiate with a doctor to provide care, presumably for a fee charged directly to the residents who receive such services." (Citations omitted.) Id.

We also noted that "all initial residents [were required to] pay $73,000," that there were "no income or wealth restrictions on applicants," and that "[t]he project was open only to residents who [were] able to take care of themselves and live independently." Id., 722. We observed that the record did not demonstrate "[h]ow th[e] project [kept the] elderly [residents] from becoming burdens on society . . . ." Id. Moreover, we recognized that the housing complex was "inaccessible for those elderly who have no capital, no steady income and are unable to take care of themselves"; id.; and that it was "[t]hese low-income elderly . . . [who were] much more likely to become burdens on society absent governmental or charitable intervention [rather] than those who qualify for [the housing complex]."[11] Id., 723. "The

---

[11] In *United Church of Christ*, we reviewed cases from other jurisdictions, which revealed that "the majority den[ies] a property tax exemption under similar circumstances. . . . The fact that inability to pay precluded the most needy from being members was a key reason for the denial of a tax exemption. . . . Another key factor in denying tax exemption was the lack of a legal commitment to provide care for those residents who subsequently were unable to pay the fees." (Citations omitted.) *United Church of Christ v. West Hartford*, supra, 206 Conn. 724.

[church was] unable to claim that [the] government would have [had] to intervene in the public interest had the [church] not provided the [housing complex]." Id. Thus, we affirmed the judgment of the Appellate Court denying the housing complex tax-exempt status under § 12-81 (7). See id., 727.

Our interpretation of § 12-81 (7) in *United Church of Christ* prevented the tax exemption of a housing complex occupied by any age-eligible individual who was capable of living independently. Implicit in our holding was our recognition that a charitable organization's mere involvement in a project, such as the establishment of an elderly housing complex, does not, per se, render the property exempt from taxation. See id., 721–23.

Finally, in *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport,* supra, 262 Conn. 213, the plaintiff, a charitable organization, appealed from the judgment of the trial court dismissing its appeal from the decision of the local board of tax review that the organization's property did not qualify for tax exemption under § 12-81 (7) because the organization provided housing for persons of low and moderate income. Id., 214–16. The organization had purchased the subject property to provide housing for the elderly. Id., 216. As reflected in its articles of association, the organization's purpose was "[t]o provide for aged men and women, whether married or single, a comfortable, happy residence in Bridgeport . . . where they may pass their declining years among congenial companions and have necessary care . . . to receive and administer or expend legacies, gifts, endowments, trusts or other funds bequeathed, subscribed or given for the purpose of establishing, equipping, maintaining, renewing or replacing said home . . . ." (Internal quotation marks omitted.) Id. The organization's bylaws further provided that the organization "shall receive the rent from paying guests . . . ." (Internal

quotation marks omitted.) Id., 217. Upon these facts, the trial court concluded that the organization's property did not qualify for tax exemption under § 12-81 (7) because the organization received rent from some of the occupants and because § 12-81 (7) expressly excludes from tax exemption low and moderate income housing. Id., 219.

On appeal, the organization claimed that the trial court improperly determined that the exclusion from tax-exempt status of housing for persons of low or moderate income applied to its facility. Id. In upholding the trial court's determination that the subject property was not tax exempt, we emphasized that, "in order for an organization to be granted tax-exempt status [it] must be exclusively charitable, not only in the purposes for which it is formed and to which its property is dedicated, but also in the manner and means it adopts for the accomplishment of those purposes. . . . Thus, [w]hether the property for which exemption is claimed is actually and exclusively used for . . . [charitable] purposes must be determined from the facts of the case. . . . The extent to which an organization uses its property for purposes *not directly related to its charitable purpose*, therefore, is relevant to the determination of whether the organization's property is entitled to tax-exempt status under § 12-81 (7)." (Emphasis added; internal quotation marks omitted.) Id., 221. We noted that "[§] 12-81 (7) clearly provides that housing for persons or families of low and moderate income shall not constitute a charitable purpose"; (internal quotation marks omitted) id., 222; and that, "[b]ecause a property must be used *exclusively* for a charitable purpose in order for it to qualify as tax-exempt . . . the [organization's] operation of elderly housing disqualifie[d] it from tax-exempt status." (Citations omitted; emphasis in original.) Id. We therefore affirmed the judgment of the trial court. Id.

We glean from the foregoing cases a number of principles to apply in determining whether property is exempt from taxation under § 12-81 (7). First, the rental of property does not necessarily prevent the property from qualifying for tax exemption, as long as the property is used exclusively for carrying out the charitable purposes of the organization to which the property belongs. See General Statutes §§ 12-81 (7) and 12-88; *Hartford Hospital* v. *Hartford*, supra, 160 Conn. 378. Second, when a charitable organization does nothing to "make it less likely that [the individuals it services] will become burdens on society and more likely that they will become useful citizens," the subject property cannot qualify for a tax exemption. (Internal quotation marks omitted.) *United Church of Christ* v. *West Hartford*, supra, 206 Conn. 719. Finally, housing provided for low or moderate income individuals is not tax-exempt. General Statutes § 12-81 (7); see *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport*, supra, 262 Conn. 221–22.

On the basis of these principles, as well as our repeated observation that the determination of "whether a property is tax-exempt is a fact intensive inquiry"; *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport*, supra, 262 Conn. 220; accord *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, 258 Conn. 553, 563, 783 A.2d 993 (2001); see also *Camp Isabella Freedman of Connecticut, Inc.* v. *Canaan*, 147 Conn. 510, 514, 162 A.2d 700 (1960) ("[w]hether the property for which exemption is claimed is actually and exclusively used for [charitable] purposes must be determined from the facts of the case"); we conclude that the trial court properly determined that the plaintiff's property is entitled to tax-exempt status under § 12-81 (7). The plaintiff's sole purposes are to offer counseling and rehabilitation services, and to provide shelter for and to reacclimate department inmates to societal demands in preparation of their release. Such a function constitutes a charitable

purpose within our broad definition of that term because it encompasses "activities . . . which are intended to improve the physical, mental and moral condition of the recipients and make it less likely that they will become burdens on society and more likely that they will become useful citizens." *United Church of Christ* v. *West Hartford*, supra, 206 Conn. 719. We find that the plaintiff uses the subject property exclusively for charitable purposes, even though it receives "rent" from some of the resident inmates. Cf. *Hartford Hospital* v. *Hartford*, supra, 160 Conn. 377. Like the rented apartments in *Hartford Hospital*, the plaintiff's property is "used exclusively for carrying out [the plaintiff's charitable] purposes . . . ." General Statutes § 12-81 (7). In accordance with our holding in *Hartford Hospital*, an organization's use of its property exclusively for charitable purposes is not negated by the organization's "renting" of the property to its occupants as long as "the use [is] exclusively for [charitable] purposes [and not] for some other purpose." *Hartford Hospital* v. *Hartford*, supra, 377.

Furthermore, as we previously have noted in this opinion; see footnote 3 of this opinion; a corporation's charter reveals its purpose. See, e.g., *Waterbury First Church Housing, Inc.* v. *Brown*, 170 Conn. 556, 561, 367 A.2d 1386 (1976); *Camp Isabella Freedman of Connecticut, Inc.* v. *Canaan*, supra, 147 Conn. 514. The plaintiff's certificate of incorporation does not call for the collection of rent—as did the bylaws of the plaintiff organization in *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport*, supra, 262 Conn. 217—despite the fact that one of the plaintiff's purposes, as expressed in its certificate of incorporation, is to provide "shelter." In the context of the plaintiff's other stated purposes, namely, "to provide support and service to [meet] the needs of ex-offenders" and "[t]o introduce ex-offenders coming out of penal institutions to a caring community which

will aid them spiritually and physically in the difficult process of re-entry into society," it is apparent that the plaintiff's collection of "rent" from department inmates occurs solely in furtherance of, and in direct relation to, its charitable function of facilitating the inmates' transition back into society. The fact that the plaintiff's certificate of incorporation calls for the plaintiff to provide shelter in conjunction with other support services, without requiring the collection of rent, is further evidence that the plaintiff uses its property exclusively for charitable purposes, and for no other purpose. Cf. *Hartford Hospital* v. *Hartford*, supra, 160 Conn. 377–78.

We further conclude that the provisions of § 12-88 are of no avail to the city. As we observed in *Hartford Hospital*, "[t]he distinction is not between nonrental and rental but between use exclusively for [charitable] purposes and [noncharitable] use. The third sentence of § 12-88 exempts from taxation *any portion of a lot or building used exclusively for [charitable] purposes* even though the remaining portion shall be subject to taxation. This serves to emphasize our construction of the second sentence [of § 12-88] that the basic question is whether the use was *exclusively* for [charitable] purposes or for *some other* purpose." (Emphasis added.) Id., 377. Thus, the mere fact that the plaintiff receives "rent" from employed resident inmates does not, in itself, indicate that the property is used "for some other purpose" within the meaning of § 12-88. See id., 377–78; see also *Boardman* v. *Burlingame*, 123 Conn. 646, 653–54, 197 A. 761 (1938) ("The question of tax exemption is not in issue . . . and the testimony is uncontradicted that the [Hartford] Retreat [an institution for those with mental illness] is organized and operated for the public welfare without profit to itself or any individual. The mere fact that some patients pay for part or all of their care does not destroy its charitable character."). The "rent" that the plaintiff receives from the employed

resident inmates serves to further the plaintiff's charitable purpose of rehabilitating the inmates by requiring them to assume responsibilities that they will be faced with upon their release. Therefore, the plaintiff's property does not fall within the exception to tax exemption contained in the second sentence of § 12-88.

The city contends that the funds that the plaintiff receives from its contract with the department constitute "rent," thereby rendering the plaintiff's property taxable in accordance with the second sentence of § 12-88. We do not agree. The funds that the plaintiff receives from the department do not constitute "rent" but, instead, qualify as a contractual payment for various rehabilitative services that the plaintiff provides to resident inmates in an effort to transition them back into society, including work-release programs, alcohol and drug treatment, counseling, and housing of inmates. Moreover, even if we assume that the department's payment to the plaintiff constitutes "rent," we already have determined that rental income that is used exclusively in furtherance of an organization's charitable purposes does not remove the organization's property from the category of properties that are exempt from taxation under § 12-81 (7).

The city lastly claims that the department inmates "are low income wage earners and that [the inmates'] rents are subsidized by the [department]," thereby disqualifying the plaintiff's property from tax exemption. See General Statutes § 12-81 (7) ("housing subsidized, in whole or in part, by . . . state . . . government and housing for persons . . . of low and moderate income shall not constitute a charitable purpose under this section"). At trial, however, the parties introduced limited evidence regarding these issues,[12] and the city, in

---

[12] With respect to the issue of whether the department inmates are low income wage earners, both the plaintiff and the city asked limited questions of Edward Davies, who testified for the plaintiff as its executive director.

"[Plaintiff's Counsel]: Has [the plaintiff] ever been described in printed

its posttrial brief, did not pursue this claim, but, instead, elected to present its claim that the plaintiff rents or leases the facility and that the plaintiff's bylaws and mission statement do not provide for such use. The trial court, therefore, did not make any findings of fact or conclusions of law pertaining to the low income or subsidization issues in its memorandum of decision.

documents, in forms, in applications, by any of the staff members, by you, as affordable housing?

"[Davies]: No. It has not.

\* \* \*

"[City Counsel]: [The inmates are] . . . lower, moderate income earning people, aren't they?

"[Davies]: Most often. There are rare exceptions."

With respect to the issue of subsidization, the city questioned Davies as follows:

"[City Counsel]: Is it fair to say that the state . . . is subsidizing [the plaintiff] so that the inmates can live in that facility?

"[Davies]: I think that simplifies the relationship, but 80 percent of our costs are staff salaries and supervision.

"[City Counsel]: [If] [t]he state . . . didn't pay [the plaintiff] for these people who live there, where would they be? Would [the plaintiff] be able to do it without the state . . . paying for them?

"[Davies]: No, not without that contract.

"[City Counsel]: And . . . your main underwriter of your entire project is better than 90 percent, correct?

"[Davies]: Yes.

"[City Counsel]: And you wouldn't call that subsidizing the housing of these people for [the plaintiff]?

"[Davies]: Clearly they're a portion of it, yes. A portion of that is housing."

Additionally, Ted Gwartney, the city's tax assessor at the time of trial, testified that, in his opinion, the state subsidizes the plaintiff:

"[City Counsel]: And is it your opinion, as the assessor of Bridgeport, that housing for—the housing that is subsidized by state and government and houses low income or moderate income people is not exempt under § 12-81 (7)?

"[Gwartney]: That's my understanding, yes.

\* \* \*

"[Plaintiff's Counsel]: And just hypothetically speaking, if I'm correct, if the provision of housing were, in fact, included in the bylaws, the charter, the admissions statement, it would be your opinion then that [the plaintiff] was acting in accordance with its charter?

"[Gwartney]: No, because [§ 12-81 (7)] specifically states that housing that is subsidized by the state is not exempt."

The city could have, and should have, sought clarification or further elaboration by the trial court with respect to these issues by filing a motion for articulation. See Practice Book § 66-5. The city's failure to do so "leaves this court without the ability to engage in a meaningful review." *Alliance Partners, Inc.* v. *Oxford Health Plans, Inc.*, 263 Conn. 191, 204, 819 A.2d 227 (2003).

The judgment is affirmed.

In this opinion the other justices concurred.