******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# THE LEE MEMORIAL METHODIST CHURCH OF NORWICH, CONNECTICUT *v.* CITY OF NORWICH
## (AC 47726)

Westbrook, Wilson and DiPentima, Js.

*Syllabus*

The defendant town appealed from the trial court's judgment sustaining the plaintiff church's appeal from the defendant's denial of a tax exemption pursuant to statute (§ 12-81 (14)) for a portion of the plaintiff's real property leased to a for-profit, licensed daycare facility. The defendant claimed, inter alia, that the court misapplied the plain language of § 12-81 (14). *Held*:

The defendant's claim that the trial court misapplied the plain language of § 12-81 (14) because the plaintiff's property was not used exclusively as a daycare facility was unavailing, as the statutory language does not require that the plaintiff be affiliated with or operate the daycare facility on its property in order for the tax exemption to apply.

The trial court properly reconciled the statutory requirements of § 12-81 (14) with the tax exemption statute (§ 12-88) governing its provisions, as the property leased by the daycare facility was owned by the plaintiff, a religious organization, used exclusively as a daycare facility, and leased in furtherance of the purpose intended under § 12-81 (14), namely, as a daycare facility.

The defendant's claim that the trial court erred in failing to apply the principle of noscitur a sociis to supply the phrase "not-for-profit" to the daycare facility exception contained in § 12-81 (14) was unavailing, as there was no confusion or ambiguity regarding the term "daycare facility" as it is used in § 12-81 (14).

The trial court was not required to apply the analysis set forth in *St. Joseph's Living Center, Inc.* v. *Windham* (290 Conn. 695), as it was inapplicable to this case.

This court declined to review the defendant's claim that permitting a tax exemption under the present circumstances would subvert public policy by granting an unfair advantage to nonprofit organizations to the disadvantage of commercial landlords, as § 12-81 (14) is clear and unambiguous regarding the exemption for daycare facilities and the application of the statute to the facts did not yield an absurd result.

Argued September 10, 2025—officially released March 10, 2026

*Procedural History*

Appeal from the decision of the defendant's board of assessment appeals upholding the defendant's denial of a tax exemption for certain real property owned by the plaintiff, brought to the Superior Court in the judicial district of New London and transferred to the judicial

district of New Britain, where the case was tried to the court, *Budzik, J.*; judgment sustaining the plaintiff's appeal, from which the defendant appealed to this court. *Affirmed*.

*Lloyd L. Langhammer*, for the appellant (defendant).

*Thomas A. Plotkin*, for the appellee (plaintiff).

*Opinion*

WILSON, J. In this tax appeal, the defendant, the city of Norwich, appeals from the judgment of the trial court in favor of the plaintiff, The Lee Memorial Methodist Church of Norwich, Connecticut, determining that a portion of the property owned by the plaintiff and leased to a daycare facility was entitled to a tax exemption under General Statutes § 12-81 (14). On appeal, the defendant claims that the court (1) misapplied the plain language of § 12-81 (14) by ignoring the fact that the plaintiff's real property was not used exclusively as a daycare facility, (2) ignored the plain language of § 12-81 (7) and (14), which requires consideration of General Statutes § 12-88, (3) failed to apply the doctrine of noscitur a sociis in its interpretation of § 12-81 (14), and (4) failed to apply the analysis in *St. Joseph's Living Center, Inc.* v. *Windham*, 290 Conn. 695, 966 A.2d 188 (2009) (*St. Joseph's*), to the tax exemption claimed in the present case. The defendant also argues that "permitting a tax exemption under the present circumstances would subvert public policy by granting unfair advantage to nonprofits." We affirm the judgment of the court.

The court made the following findings of fact based on the parties' stipulations and the credible evidence presented at trial. "At all [relevant times] . . . [the plaintiff] was the owner of certain real property known as 294 Washington Street in Norwich, Connecticut (church property). Since approximately 1958, [the plaintiff] has operated a Methodist denomination church on the church property. [The plaintiff] is a federally tax-exempt organization. For many years, [the defendant] has approved a

tax exemption for [the plaintiff] and the church property under . . . § 12-81 (12) and (13).

"In June of 2021, [the plaintiff] entered into a written lease agreement (lease) with Creating Opportunities for Youth, LLC, doing business as Little Learners (Little Learners) for the purpose of operating a for-profit, licensed daycare facility and school for children. Under the lease, Little Learners occupies a portion of the church property (subject property) in order to provide daycare services and school to infants and children. The daycare facility is open five days a week (Monday–Friday) from 6:30 a.m. through 6 p.m. and two evenings per month to accommodate parent meetings and staff training. Little Learners is a separate business entity and is not affiliated with [the plaintiff] (outside the lease terms). Services provided by Little Learners at the daycare facility are not limited to [the plaintiff's] parishioners or its members.

"In January of 2022, [the assessor for the defendant] informed [the plaintiff] by letter that [the defendant] had approved a tax exemption for the church property, excepting . . . the subject property. . . . At all [relevant times] . . . [the plaintiff] owned the entirety of the church property, including that portion designated herein as the subject property. At all [relevant times] . . . the subject property was exclusively used as a daycare facility under the terms of the lease. [The defendant] assessed the subject property at \$230,720 (or \$329,600 at fair market value)."

The plaintiff appealed the assessor's determination to the board of assessment appeals (board), seeking a full tax exemption for the property. The board denied the plaintiff's appeal, and the plaintiff appealed to the trial court pursuant to General Statutes § 12-117a. Following trial, the court issued a memorandum of decision sustaining the plaintiff's appeal from the board's decision. The court determined that, "[b]y its plain terms, and as relevant to this appeal, § 12-81 (14) requires only that exempt property be owned by a religious organiza-

tion and that it be used exclusively as a daycare facility. Section 12-81 (14) includes no additional requirement that the daycare center also be operated by the religious organization. Because it is undisputed that the subject property is owned by [the plaintiff], that [the plaintiff] is a religious organization, and that the subject property is exclusively used as a daycare facility, the court holds that the subject property is entitled to the tax exemption set forth in . . . § 12-81 (14)." The defendant then filed the present appeal.

Before addressing the merits of the defendant's claims, we first set forth the applicable standard of review. The meaning of § 12-81 (14) as applied to the undisputed facts presents a question of statutory construction, over which we exercise plenary review. See *Rainbow Housing Corp.* v. *Cromwell*, 340 Conn. 501, 511, 264 A.3d 532 (2021). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us to first consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Stanford* v. *Nogiec*, 233 Conn. App. 862, 869–70, 342 A.3d 268, cert. denied, 353 Conn. 926, 346 A.3d 511 (2025).

Additionally, our review is governed by "the rule of strict construction applicable to statutory provisions granting tax exemptions. . . . It is . . . well established that in taxation cases . . . provisions granting a tax exemption are to be construed strictly against the party claiming the exception, who bears the burden of proving entitlement to it. . . . [S]uch strict construction neither requires nor permits the contravention of the true intent and purpose of the statute as expressed in the language used." (Citation omitted; internal quotation marks omitted.) *Rainbow Housing Corp.* v. *Cromwell*, supra, 340 Conn. 511–12. Principally, our analysis seeks "to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *FuelCell Energy, Inc.* v. *Groton*, 350 Conn. 1, 6, 323 A.3d 268 (2024).

I

The defendant first claims that the court misapplied the plain language of § 12-81 (14) because the plaintiff's property was not used exclusively as a daycare facility. We disagree.

Section 12-81 (14) provides in relevant part: "Subject to the provisions of section 12-88, real property and its equipment owned by, or held in trust for, any religious organization and exclusively used as a school, a daycare facility, a Connecticut nonprofit camp or recreational facility for religious purposes, a parish house, an orphan asylum, a home for children, a thrift shop, the proceeds of which are used for charitable purposes, a reformatory or an infirmary or for two or more of such purposes" shall be exempt from taxation.

The issue before this court is whether the subject property is entitled to an exemption pursuant to § 12-81 (14), subject to the provisions of § 12-88.[1] The defendant

---

[1] General Statutes § 12-88 provides in relevant part: "Real property belonging to, or held in trust for, any organization mentioned in subdivision . . . (14) . . . of section 12-81, which real property is so held for one or more of the purposes stated in the applicable subdivision, and from which real property no rents, profits or income are derived, shall

contends that § 12-81 (14) allows for exemptions for "certain church related functions, like a school, a day-care center (run by the church), a church's thrift store, etc." According to the defendant, because the subject property is used for the purpose of a for-profit daycare facility unaffiliated with the plaintiff, the property is not used exclusively in a manner that comports with § 12-81 (14) and, therefore, is ineligible for tax exemption under § 12-81 (14). We disagree.

It is undisputed that the church property is owned by the plaintiff, a religious organization, and that the subject property is leased to Little Learners, a for-profit daycare facility. Contrary to the contention of the defendant, the subject property is exempt because it is owned by the plaintiff and is being used exclusively as a daycare facility in accordance with the plain language of § 12-81 (14). Section 12-81 (14) contains no requirement that a daycare facility located on real property owned by a religious organization also be run by or operated by that religious organization. Simply put, the plain language of the statute does not require that the plaintiff run the day-care facility for the exemption to apply. By contrast, § 12-81 (14) includes requirements on real property owned by a religious organization used as a camp or recreational facility or as a thrift shop to receive a tax exemption. Section 12-81 (14) specifically requires that property used as "a Connecticut nonprofit camp or recreational facility" be "for religious purposes . . . ." The statute also restricts the tax exemption for property used as a thrift shop to "a thrift shop, the proceeds of which are used for charitable purposes . . . ."

be exempt from taxation though not in actual use therefor by reason of the absence of suitable buildings and improvements thereon, if the construction of such buildings or improvements is in progress. The real property belonging to, or held in trust for, any such organization, not used exclusively for carrying out one or more of such purposes but leased, rented or otherwise used for other purposes, shall not be exempt. If a portion only of any lot or building belonging to, or held in trust for, any such organization is used exclusively for carrying out one or more of such purposes, such lot or building shall be so exempt only to the extent of the portion so used and the remaining portion shall be subject to taxation."

"[I]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 216–17, 901 A.2d 673 (2006). It is also a well settled maxim of statutory construction that "[courts] are not permitted to supply statutory language that the legislature may have chosen to omit." (Internal quotation marks omitted.) *Alves* v. *Giegler*, 348 Conn. 364, 391, 306 A.3d 455 (2024). "[T]he intent of the legislature is to be found not in what it meant to say but in what it did say." (Internal quotation marks omitted.) *Glastonbury Co.* v. *Gillies*, 209 Conn. 175, 179, 550 A.2d 8 (1988). Because § 12-81 (14) does not require that the plaintiff be affiliated with, let alone operate, the daycare center in order to qualify for the exemption, we decline to graft such a requirement, otherwise omitted by the legislature, onto § 12-81 (14).

## II

The defendant next claims that the court ignored the plain language of § 12-81 (14), which requires consideration of § 12-88.[2] Although we agree that § 12-81 (14) is subject to the provisions of § 12-88, as plainly stated within the statute, we disagree with the defendant that the court failed to reconcile §§ 12-81 (14) and 12-88 in its interpretation of the exemption under § 12-81 (14).

Section 12-81 (14) begins with the phrase "[s]ubject to the provisions of section 12-88 . . . ." Section 12-88 provides in relevant part that "[r]eal property belonging to, or held in trust for, any organization mentioned in

---

[2]The defendant also contends, as part of this claim, that the court ignored the plain language of § 12-81 (7). The defendant's analysis of § 12-81 (7), however, is included within its fourth claim on appeal, pertaining to the exemption for charitable organizations under § 12-81 (7). We, therefore, limit our analysis of this claim to an evaluation of the statutory relationship between § 12-88 and § 12-81 (14), and consider the applicability § 12-81 (7) in part IV of this opinion.

subdivision . . . (14) . . . of section 12-81, which real property is so held for one or more of the purposes stated in the applicable subdivision, and from which real property no rents, profits or income are derived, shall be exempt from taxation though not in actual use therefor by reason of the absence of suitable buildings and improvements thereon, if the construction of such buildings or improvements is in progress. The real property belonging to, or held in trust for, any such organization, not used exclusively for carrying out one or more of such purposes but leased, rented or otherwise used for other purposes, shall not be exempt. If a portion only of any lot or building belonging to, or held in trust for, any such organization is used exclusively for carrying out one or more of such purposes, such lot or building shall be so exempt only to the extent of the portion so used and the remaining portion shall be subject to taxation."

Our interpretation of §§ 12-81 (14) and 12-88 is guided by *Isaiah 61:1, Inc.* v. *Bridgeport*, 270 Conn. 69, 76, 79–80, 851 A.2d 277 (2004) (*Isaiah 61:1*), in which our Supreme Court considered whether certain property owned by the plaintiff, Isaiah 61:1, Inc., and used to house, rehabilitate, and counsel inmates completing the final months of their sentences, qualified for tax-exempt status under § 12-81 (7).[3] Id., 70–72. The defendant city claimed that the plaintiff's property did not qualify for tax-exempt status under § 12-81 (7) because, inter alia, the inmates occupying the premises paid rent to the plaintiff. Id., 74. The Supreme Court disagreed and concluded that the plaintiff's receipt of rent from the resident inmates did not undermine the exclusive use of the property for charitable purposes. Id., 75. Similar to the defendant's argument in *Isaiah 61:1*, the defendant in the present case argues that the subject property,

[3] General Statutes § 12-81 provides in relevant part: "The following-described property shall be exempt from taxation . . . (7) (A) Subject to the provisions of sections 12-87 and 12-88, the real property of, or held in trust for, a corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes . . . ."

for which the plaintiff collects rental payments, should not be exempt. Although the present case involves an exemption sought pursuant to § 12-81 (14), rather than § 12-81 (7), we find the court's interpretation of § 12-88 in *Isaiah 61:1* persuasive regarding whether the plaintiff's receipt of rent renders the subject property ineligible for an exemption under § 12-81 (14).

As stated in *Isaiah 61:1*, "[p]roperty otherwise exempt from taxation under § 12- 81 (7) also must satisfy the conditions set forth in . . . § 12-88, which provides in relevant part: 'Real property belonging to, or held in trust for, any organization mentioned in subdivision (7) . . . of section 12-81, which real property is so held for . . . the purposes stated in the applicable subdivision . . . shall be exempt from taxation . . . . The real property belonging to . . . any such organization . . . not used *exclusively* for carrying out . . . such purposes but leased, rented or otherwise used for *other purposes*, shall not be exempt. . . .'" (Emphasis in original.) Id., 76. "Thus, in order for real property used for charitable purposes to qualify for tax exemption under §§ 12-81 (7) and 12-88, the property must: (1) belong to or be held in trust for a corporation organized exclusively for charitable purposes; (2) be used exclusively for carrying out such charitable purposes; (3) not be leased, rented or otherwise used for a purpose other than the furtherance of its charitable purposes . . . ." Id., 76–77.[4]

The court in *Isaiah 61:1* cited with approval its decision in *Hartford Hospital* v. *Hartford*, 160 Conn. 370, 279 A.2d 561 (1971), in which the court considered whether the plaintiff hospital was entitled to a tax exemption for an apartment building that it owned adjacent to the hospital that was used exclusively to house hospital staff,

[4] In addition, in order to qualify for a tax exemption under §§ 12-81 (7) and 12-88, the property must not be housing subsidized by the government and must not constitute low-income or moderate-income housing. See *Isaiah 61:1, Inc.* v. *Bridgeport*, supra, 270 Conn. 77. As there is no claim that the subject property in the present case is "housing" as that term is ordinarily understood, we limit our analysis to the first three prongs set forth in *Isaiah 61:1*.

all of whom paid rent to the hospital. Citing *Hartford Hospital*, the court in *Isaiah 61:1* "noted that the second sentence of . . . § 12-88, which provides that an organization's property that is not used exclusively for carrying out the organization's purposes but that is leased, rented or otherwise used for other purposes, shall not be exempt, was the key sentence of [the statute] . . . and state[d] the basic premise upon which an exemption may be denied. . . . We determined that, under § 12-88, property belonging to or held in trust for a hospital which is used exclusively for carrying out hospital purposes shall be exempt. If the property is leased, rented or used for anything other than hospital purposes [however] it shall not be exempt. The determining factor is the exclusive use of the property for hospital purposes. The distinction is not between nonrental and rental but between use exclusively for hospital purposes and nonhospital use. The third sentence of § 12-88 exempts from taxation any portion of a lot or building used exclusively for hospital purposes even though the remaining portion shall be subject to taxation. This serves to emphasize our construction of the second sentence that the basic question is whether the use was exclusively for hospital purposes or for some other purpose. . . . [T]he fact that certain sums are paid for use of the rooms occupied . . . does not alter the character of the occupation." (Citations omitted; internal quotation marks omitted.) *Isaiah 61:1, Inc*. v. *Bridgeport*, supra, 270 Conn. 79–80.

Consistent with the court's analysis in *Isaiah 61:1*, therefore, we conclude that, in order for real property used as a daycare facility to qualify for tax exemption under §§ 12-81 (14) and 12-88, the property must: (1) belong to or be held in trust for a religious organization; (2) be exclusively used as a daycare facility; and (3) not be leased, rented or otherwise used for a purpose other than a daycare facility. See id., 76–77; see also *St. Joseph's Living Center, Inc.* v. *Windham*, supra, 290 Conn. 709. In the present case, the subject property is owned by the plaintiff, a religious organization, is exclusively used as a daycare facility, and is leased in furtherance

of the purpose intended under § 12-81 (14), namely, as a daycare facility.

We note the defendant's reliance to the contrary on the language "and from which real property no rents, profits or income are derived" in the first sentence of § 12-88. The defendant contends that, pursuant to this language, the subject property should not be exempt. The defendant's reliance on this language, however, is misplaced. In *St. Joseph's Living Center, Inc.* v. *Windham*, supra, 290 Conn. 728, our Supreme Court clarified what it called the often "misunderstood and misapplied" passage of § 12-88 relating to rents, profits or income. The court in *St. Joseph's* explained that several courts had taken the clause "[r]eal property belonging to . . . any organization mentioned in subdivision (7) . . . of section 12-81 . . . and from which real property no rents, profits or income are derived, shall be exempt from taxation" out of context, grafting onto the tax exemption analysis a requirement that the property for which exemption is sought produce "no rent, profits or income." (Internal quotation marks omitted.) Id., 728–29.

As explained in *St. Joseph's*, "this provision is directly subordinate to the following clause of the statute: 'though not in actual use therefor by reason of the absence of suitable buildings and improvements thereon, if the construction of such buildings or improvements is in progress.' . . . Thus, when the statute is read in its entirety, it makes clear that the restriction relating to 'rents, profits or income' is only relevant if the property is not being used for a charitable or other exempt purpose 'by reason of the absence of suitable buildings and improvements thereon, if the construction of such buildings or improvements is in progress.' . . . Unless such a specific claim is raised, this portion of § 12-88 simply is irrelevant to the analysis under § 12-81 (7)." (Citations omitted.) Id., 729. For the reasons set forth in *St. Joseph's*, we conclude that the language "and from which real property no rents, profits or income are derived" in the first sentence of § 12-88 is not relevant to our analysis under § 12-81 (14).

The trial court, therefore, did not ignore the plain language of § 12-81 (14), and properly considered § 12-88, in concluding that the subject property was entitled to a tax exemption pursuant to § 12-81 (14).

### III

The defendant next claims that the court erred by failing to apply the principle of noscitur a sociis[5] in its interpretation of § 12-81 (14). Specifically, the defendant contends that, because the exempt uses listed in § 12-81 (14) are traditionally maintained by religious organizations, the legislature could not have intended that a daycare facility would include a for-profit entity leasing property from the church. We disagree.

The defendant essentially contends that the court should have applied the principle of noscitur a sociis to add the words "not-for-profit" to the daycare center exemption in § 12-81 (14). It is true that, "[w]hen determining the legislature's meaning of a statutory word, it is . . . appropriate to consider the surrounding words pursuant to the canon of construction noscitur a sociis. . . . By using this interpretive aid, the meaning of a statutory word may be indicated, controlled or made clear by the words with which it is associated in the statute." (Citation omitted; footnote omitted.) *Balloli* v. *New Haven Police Dept.*, 324 Conn. 14, 23, 151 A.3d 367 (2016); see also *DATTCO, Inc.* v. *Commissioner of Transportation*, 324 Conn. 39, 48, 151 A.3d 823 (2016) (when statute includes list or group of related words, application of noscitur a sociis doctrine permits meaning of particular word or phrase to be ascertained by reference to associated words or phrases).

We initially note that the cases that have applied the principle of noscitur a sociis have done so to clarify the meaning of a single word or phrase within a statute by examining the words with which it is associated in

---

[5] Noscitur a sociis means "it is known by its associates." (Internal quotation marks omitted.) *State* v. *Agron*, 323 Conn. 629, 635 n.3, 148 A.3d 1052 (2016).

the statute. See, e.g., *DATTCO, Inc.* v. *Commissioner of Transportation*, supra, 324 Conn. 48 (grouping of term "facilities" in General Statutes § 13b-36 (a) with other nouns that each denote tangible objects, including land, buildings, and equipment, favors conclusion that term "facilities" also refers to tangible objects, and did not include government issued certificate of use (internal quotation marks omitted)); *Balloli* v. *New Haven Police Dept.*, supra, 324 Conn. 22–23 (construing phrase "place of abode" in General Statutes § 31-275 (1) (A) (i) in relationship to associated terms). In the present case, however, there is no need for clarification as there is no confusion or ambiguity regarding the term "daycare facility" as it is used in § 12-81 (14).

Furthermore, the defendant overlooks the "principle of statutory construction that a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, supra 279 Conn. 216.

The defendant, therefore, cannot prevail on its claim that the court erred by failing to apply the principle of noscitur a sociis to supply the phrase "not-for-profit" to the daycare center exemption contained in § 12-81 (14).

## IV

The defendant next claims that the court failed to apply the analysis in *St. Joseph's Living Center, Inc.* v. *Windam*, supra, 290 Conn. 695, to the tax exemption claimed in the present case. We disagree and conclude, for the reasons that follow, that it was unnecessary for

the court to apply the framework set forth in *St. Joseph's* in the present case.

In *St. Joseph's,* our Supreme Court considered whether the defendant town properly had denied the plaintiff, a skilled nursing home facility, a property tax exemption under § 12-81 (7)[6] and § 12-88. Id., 697. The court began its analysis by stating that "[t]he first statutory requirement . . . for tax-exempt status under §§ 12-81 (7) and 12-88 is that the property must belong to or be held in trust for a corporation organized exclusively for charitable purposes." (Citation omitted; internal quotations omitted.) Id., 712–13. The court next considered the second step in its analysis under § 12-81 (7), namely, "whether the real property at issue [was] used exclusively for carrying out [the corporate entity's] charitable purposes." (Internal quotation marks omitted.) Id., 740. The court stated that "the exclusive use requirement of § 12-81 (7) must be strictly construed so as to require a charitable organization seeking the benefit of a property tax exemption to use its property in such a manner that its activities are entirely dedicated to serving its stated charitable purpose." Id., 745.

The defendant argues that the court should have applied the analytical framework set forth in *St. Joseph's* to the present facts. Doing so, the defendant contends, will demonstrate that the use of the plaintiff's property by a for-profit entity unaffiliated with the plaintiff is a noncharitable use and, therefore, the property at issue is ineligible for tax exemption under § 12-81 (14). While we agree with the defendant that *St. Joseph's* provides the proper analysis for determining whether a charitable organization is exempt under § 12-81 (7), we disagree that *St. Joseph's* applies to our consideration of whether the subject property of the plaintiff, a religious organization, which is exclusively used as a daycare facility, is entitled to an exemption under § 12-81 (14).

It is undisputed that the plaintiff is incorporated as a religious organization, not as a charitable corporation.

[6] See footnote 3 of this opinion.

The plaintiff sought a tax exemption pursuant to § 12-81 (14) for the portion of property being exclusively used as a daycare facility, not an exemption pursuant to § 12-81 (7) for property belonging to a charitable corporation and used exclusively for a charitable purpose.[7]  Unlike § 12-81 (7), which requires that the real property of a charitable corporation be "used exclusively" for carrying out the organization's charitable purposes, § 12-81 (14) requires only that the exempt property be "exclusively used as a . . . daycare facility."  Section 12-81 (14) does not require that the exempt property be used exclusively for a charitable purpose.  The analysis of § 12-81 (7) contained in *St. Joseph's,* therefore, is not applicable to this case, which involves a claimed exemption pursuant to § 12-81 (14).  For these reasons, the defendant cannot prevail on its claim that the court should have applied the analytical framework set forth in *St. Joseph's* to the present case to conclude that the plaintiff is not entitled to an exemption pursuant to § 12-81 (14).

V

The defendant's final claim is that permitting a tax exemption under the present circumstances would subvert public policy by granting an unfair advantage to nonprofit organizations to the disadvantage of commercial landlords.  Because § 12-81 (14) is clear and unambiguous regarding the exemption for daycare facilities, and the application of the statute to the facts of this case does

---

[7] The record reflects that the plaintiff initially sought, in its amended appeal from the board, a declaration that the subject property was fully exempt from taxation under § 12-81 (7) (A) and (14).  It later narrowed its focus, stating in its trial memorandum that, "[a]s a religious organization, the plaintiff qualifies for a tax exemption under § 12-81 (13) and (14).  The plaintiff is also a charitable organization and may qualify for a tax exemption pursuant to § 12-81 (7), but subdivisions (13) and (14) more appropriately apply."  Moreover, as previously noted, for many years the defendant has approved a tax exemption for the plaintiff and the church property under § 12-81 (12) and (13).  Furthermore, the trial court's memorandum of decision does not reference a claimed exemption under § 12-81 (7).  The issue of whether the plaintiff was entitled to an exemption under § 12-81 (7) is therefore extraneous to our review of the court's judgment.

not yield an absurd result, it is unnecessary for us to consider the defendant's public policy claim.[8]

As stated previously in this opinion, if the meaning of a statute is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. When a statute is not plain and unambiguous, however, "we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Stanford* v. *Nogiec*, supra, 233 Conn. App. 870.

As discussed in this opinion, the subject property is owned by the plaintiff, a religious organization. It is used exclusively as a daycare facility and is leased in furtherance of the purpose intended under § 12-81 (14), namely, as a daycare facility. Under these circumstances, § 12-81 (14) unambiguously provides that the subject property is exempt from taxation. Because the statute is clear and unambiguous regarding the exemption for daycare facilities, and the application of the statute to the facts of this case does not yield an absurd result, we decline the defendant's invitation to consider extratextual evidence regarding legislative policy behind the daycare exemption. "[I]t is well established that the primary responsibility for formulating public policy must remain

---

[8] We note that the defendant's analysis of this claim is one paragraph and consists primarily of conclusory assertions without citation to relevant legal authority. Accordingly, this claim is not adequately briefed. See *Hadji* v. *Snow*, 232 Conn. App. 829, 861–62, 339 A.3d 1168, cert. denied, 353 Conn. 902, 341 A.3d 958 (2025). Nevertheless, even assuming that this claim is adequately briefed, we do not find persuasive the defendant's argument that application of the plain language of the statute yields a result that unfairly benefits organizations such as the plaintiff to the detriment of commercial landlords. One may reasonably view our interpretation of the statute to yield a result consistent with the public good in that it incentivizes the operation of daycare facilities in areas in which they are needed, regardless of whether they are run by religious or for-profit entities.

with the legislature." (Internal quotation marks omitted.) *Adesokan* v. *Bloomfield*, 347 Conn. 416, 446–47, 297 A.3d 983 (2023). "Once the legislature has made its policy choice through statute, we are constrained to interpret the statutory language, not to decide on and implement our own policy choices." Id., 447.

The judgment is affirmed.

In this opinion the other judges concurred.